JOURNAL ENTRY AND OPINION
{¶ 1} Appellant John Biddulph ("Biddulph") appeals from the decision of the Cuyahoga County Court of Common Pleas that granted judgment in favor of appellees Bonita Rose DeLorenzo ("DeLorenzo" or "the trustee"), Ronald DeLorenzo, and Butternut Ridge Properties, Ltd. ("Butternut Ridge"). For the reasons adduced below, we affirm.
 {¶ 2} The following facts give rise to this appeal. Biddulph and DeLorenzo are brother and sister, and both are beneficiaries under their father's inter vivos trust. DeLorenzo is the trustee under the trust. Biddulph filed this action against the appellees with respect to the sale of certain trust assets.
 {¶ 3} In her capacity as trustee, DeLorenzo sold eight parcels of real estate located in North Olmsted and Olmsted Township, Ohio, for $200,000 to Butternut Ridge, a limited liability company created by her husband, Ronald DeLorenzo. Biddulph argued that the terms of the sale were not negotiated, that DeLorenzo failed to seek the highest value for the parcels, and that DeLorenzo violated her fiduciary duties of good faith and loyalty owed to Biddulph as a beneficiary by engaging in self-dealing with the trust. Biddulph also argued that all parties involved in the sale of the parcels were represented by the same set of attorneys.
 {¶ 4} The matter proceeded to trial before a magistrate. Various testimony was presented about the value of the parcels.
 {¶ 5} Douglas Thompson, an appraiser, appraised the parcels for $143,930 in November 1993. He testified that he prepared an updated appraisal of the parcels in 1996, valuing the parcels at $163,410. Thompson testified that a 2.36 acre parcel was not included in the appraisal.
 {¶ 6} Sherman Clevenger, a retired estate tax attorney for the Internal Revenue Service, testified that he was familiar with the 2.36 acre parcel, that it was odd shaped, and that it would not increase the value of the property significantly. He also testified that a lot of the parcels were irregularly shaped, they were not contiguous, some did not have access, and that the land was not readily developable. The IRS valued the property in 1996 for $178,024.
 {¶ 7} Biddulph obtained an appraisal from Frank Basile in January 1996; however, he did not call Basile to testify. The appraisal report was admitted for the limited purpose of explaining Biddulph's subsequent actions.
 {¶ 8} After obtaining Basile's appraisal, in May and June 1997, Biddulph offered $159,000 to purchase the parcels. Biddulph indicated that the offer was based on landlocked parcels, that a landlocked parcel would not sell, and that the parcels had to be sold as an aggregate.
 {¶ 9} Thereafter, Butternut Ridge offered to purchase the parcels for $200,000. This offer was accepted by DeLorenzo, and a purchase agreement was executed in December 1997. DeLorenzo testified that she never listed nor advertised the parcels for sale. She also testified that the $200,000 offer was a fair bid and that she sold the parcels for what she felt was a fair value.
 {¶ 10} In March 1998, after the purchase agreement had been executed with Butternut Ridge, but before the sale had closed, Biddulph offered $210,000 for the parcels. DeLorenzo did not consider this offer because she considered the sale to Butternut Ridge a "done deal," for which she received a fair value.
 {¶ 11} At the time of trial, the parcels still had not been developed. Ronald DeLorenzo testified that the parcels were zoned single-family residential and that there was no water, sewer or utilities on the parcels. He also testified that there were problems with access to the landlocked parcels. One parcel was described as a nonbuildable, nonconforming lot with absolutely no value.
 {¶ 12} Thomas J. Burns, a project manager for Toll Brothers Construction, testified that he reviewed the parcels and was not interested in acquiring them because of all the issues that would need to be addressed before the parcels would even be usable or buildable.
 {¶ 13} Upon the testimony and evidence presented, the magistrate found that there was no evidence in the record that the property was worth any more than $200,000. The magistrate also referenced Section XII of the George Biddulph Trust which provided DeLorenzo with broad authority respecting the value of trust assets.
 {¶ 14} Section XII of the trust sets forth the powers of the trustee and provides in relevant part:
{¶ 15} "In addition to the general power of fiduciaries, theTrustee shall have the authority, without any court order orproceeding: * * *
 {¶ 16} "To sell, at public or private sale, * * * in suchmanner and upon such terms as the Trustee may deem necessary ordesirable, * * * any assets which may at any time be heldhereunder * * *;
 {¶ 17} "* * *
 {¶ 18} "To purchase and to retain any assets from my estateand the estate of my wife * * *. The Trustee shall have the rightin the Trustee's individual capacity to purchase assets from andto sell any assets to my estate and the trust.
 {¶ 19} "The judgment of the Trustee respecting the value oftrust assets for purposes of division or distribution shall befinal and conclusive upon all persons. Except for fraud or badfaith, no claim shall be asserted against the Trustee for anyaction or inaction with respect to the trust assets."
 {¶ 20} After considering the valuation of the parcels presented into evidence and the sequence of events that occurred, the magistrate found there could be no finding that the trustee breached her duty of loyalty to the beneficiary.
 {¶ 21} Finally, the magistrate addressed an issue pertaining to the cost of litigation and found that the distribution by DeLorenzo of trust assets to herself individually, which resulted in a charge of all the costs of the trust's legal defense against Biddulph's share, was inequitable. DeLorenzo was ordered to advance funds to the trust to ensure equal distribution of trust proceeds.
 {¶ 22} Biddulph filed objections to the magistrate's decision. The trial court adopted the findings and conclusion of the magistrate in part and modified the decision in part. The trial court modified the amount of distribution stated to have been received by DeLorenzo and modified certain valuation amounts of the parcels. The court found that there was no abuse of discretion with the magistrate's conclusion on the fair market value or sale of the property. The trial court also adopted the magistrate's findings on self-dealing and found that "the trust instrument clearly permitted the trustee to sell property to herself in paragraph XII of the trust instrument."
 {¶ 23} The trial court issued two subsequent entries correcting certain amounts reflected in its decision.
 {¶ 24} Biddulph has appealed the decision of the trial court, raising two assignments of error for our review which provide:
 {¶ 25} "I: The trial court erred, as a matter of law, in ruling that appellee trustee did not breach her fiduciary duties of good faith and loyalty owed to appellant, a trust beneficiary, or otherwise violate the prohibition against self-dealing by fiduciaries, when she sold trust property to a limited liability company created by her husband and at a price dictated by him."
 {¶ 26} "II: The trial court erred, as a matter of law, in shifting the burden of proof to appellant, a trust beneficiary, to establish that the trustee's sale of trust property to her husband was below fair market value."
 {¶ 27} It is well established that "[s]o long as a trustee executes the trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor."Hopkins v. Cleveland Trust Co. (1955), 163 Ohio St. 539, paragraph one of the syllabus. Nevertheless, even where a trust instrument confers broad authority upon a trustee, a trustee cannot "take advantage of liberal provisions of a trust instrument to relieve himself from the legal responsibility of a fiduciary under the law." Saba v. Fifth Third Bank of N.W.Ohio, Lucas App. No. L-01-1284, 2002-Ohio-4658, quoting In ReEstate of Binder (1940), 137 Ohio St. 26, 43-44. Thus, in addition to the instrument creating the trust, the authority of a trustee is limited by statutory and common law. Saba, supra.
 {¶ 28} In this case, the trust instrument empowered the trustee to sell the trust property, without a court order, at public or private sale, in such manner and upon such terms as the trustee deemed necessary or desirable. The trust instrument also authorized the trustee to purchase any assets from the estate in her individual capacity.
 {¶ 29} Biddulph argues that DeLorenzo engaged in self-dealing by selling trust property to her husband's company and failing to list the property for a public sale. However, DeLorenzo's actions were all within the power granted to her under the trust.
 {¶ 30} Although Biddulph claims that R.C. 2109.44 requires approval of the probate court in addition to express authorization from the trust agreement to engage in this type of "self-dealing," this section does not apply to inter vivos trusts. See Central Nat'l Bank v. Brewer (1966),8 Ohio Misc. 409, 412. Indeed, it is well settled that a probate court has supervisory authority only over testamentary trusts and that this authority does not extend to inter vivos trusts. Dater v.Charles H. Dater Found., Hamilton App. Nos. C-020675, C-020784, 2003-Ohio-7148. As further reflected in the definition of "fiduciary" set forth in R.C. 2109.01, a fiduciary as used under the chapter is one who is "appointed by and accountable to the probate court."
 {¶ 31} Since the trust instrument authorizes the type of sale involved in this case, and the trustee's actions were not otherwise limited by statutory or common law, we find no error in the trial court's determination that the trust instrument permitted the trustee to sell the parcels to Butternut Ridge. SeeHuntington Nat'l Bank v. Wolfe (1994), 99 Ohio App.3d 585, 598.
 {¶ 32} Biddulph also claims that DeLorenzo breached her fiduciary duties of good faith and loyalty by failing to examine the report of her husband's appraiser, which omitted a 2.36 acre parcel; failing to list the property for sale; failing to negotiate the purchase price; failing to retain separate legal counsel; failing to seek approval of the probate court for the sale; failing to consider Biddulph's offer of $210,000; and failing to distribute funds to Biddulph because he refused to execute a release. We have already found that the trust instrument authorized a private sale, and that DeLorenzo did not need approval of the probate court for the sale. The remaining factors raised by Biddulph relate to the circumstances surrounding the sale of the property and the terms of the sale.
 {¶ 33} In order to prevail on a breach of fiduciary duty claim, the party seeking recovery must demonstrate an injury.Heights Driving Sch. v. Motorists Ins. Co., Cuyahoga App. No. 81727, 2003-Ohio-1737; Massara v. Henery (Nov. 22, 2000), Summit App. No. 19646. Although Biddulph repeatedly asserts that he was prejudiced by DeLorenzo's actions, he failed to establish any injury. Biddulph did not present any evidence showing that the parcels were not sold for their fair market value. Insofar as Biddulph argues that where self-dealing is established prejudice is presumed to exist, the manifest weight of the evidence presented supported the trial court's conclusion that DeLorenzo did not breach her fiduciary duties.
 {¶ 34} The evidence presented reflected that the parcels were appraised at $163,000 and the IRS valued them at $178,024. DeLorenzo sold the parcels for $200,000 to Butternut Ridge. She testified that the $200,000 bid was "above the value of the land and I thought it was fair."
 {¶ 35} Biddulph himself entered an offer of only $159,000. Although Biddulph made a second offer of $210,000 and argues he was prejudiced because DeLorenzo refused to sell the property to him at the higher price, Biddulph's second offer was made after the agreement with Butternut Ridge was entered.
 {¶ 36} There was also testimony that the parcels had usability and developmental problems. Some of the parcels were landlocked and one was described as nonbuildable. Biddulph conceded that developmental problems existed.
 {¶ 37} Despite Biddulph's argument that the property was not advertised for sale and the terms were not negotiated, the trust instrument authorized a private sale and conferred discretionary authority upon DeLorenzo concerning the manner and terms of the sale. Further, under the terms of the trust, DeLorenzo had the authority to sell the property without consulting Biddulph. SeeFischer v. Key Trust Co. (Nov. 20, 1998), Lucas App. No. L-97-1361.
 {¶ 38} Upon our review of the record in this case, we find no error in the trial court's determination that DeLorenzo did not breach her fiduciary duties. Biddulph's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Blackmon, J., Concur.