CINCINNATI CITY SCHOOL DISTRICT BOARD OF EDUCATION,

APPELLANT, *v.* CONNERS ET AL., APPELLEES.

[Cite as *Cincinnati City School Dist. Bd. of Edn. v. Conners,*

**132 Ohio St.3d 468, 2012-Ohio-2447.**]

*Contracts—Violation of public policy—R.C. 3313.41—A deed restriction in the contract for sale of an unused school building that prevents the use of the property for school purposes is unenforceable as against public policy— Judgment affirmed.*

(No. 2011-0673—Submitted February 7, 2012—Decided June 6, 2012.)

APPEAL from the Court of Appeals for Hamilton County,

No. C-100399, 2011-Ohio-1084.

_____

**SYLLABUS OF THE COURT**

The inclusion of a deed restriction preventing the use of property for school purposes in the contract for sale of an unused school building is unenforceable as against public policy.

_____

**LANZINGER, J.**

{¶ 1} In this action, the Cincinnati City School District Board of Education ("CPS") asks us to rule on the validity of a deed restriction it placed on school property that it offered for sale at public auction. The issue is whether the deed restriction contravenes public policy by preventing an unused school building from being used by a public charter school. While recognizing that the freedom to contract is a broad right, we hold that the inclusion of a deed restriction preventing the use of property for school purposes in the contract for sale of an unused school building is unenforceable as against public policy.

## I. Procedural History of Case

{¶ 2}   In June 2009, CPS conducted a public auction for nine of its vacant school buildings.   The promotional materials for the auction advised that the auctioned buildings "may not be used as any type of educational facility."   In the June 9, 2009 purchase and sale agreement, the buyer agreed to "use the Property for 'commercial development' " and "not to use the Property for school purposes."   The buyer further agreed "that the deeds to the Property will be restricted to prohibit future use of the Property for school purposes," but the agreement added that this provision does not apply to CPS, which would be allowed to repurchase the property "for school purposes."   Because CPS had decided that the school buildings were "not suitable for use as classroom space" pursuant to former R.C. 3313.41(G), 151 Ohio Laws, Part V, 8764, 8788-8789, CPS did not offer them for sale to community schools before auction.

{¶ 3}   The appellees, Dr. Roger Conners and his mother, Deborah Conners, were the only bidders to bid at auction on the former Roosevelt School located on Tremont Street in Cincinnati.   They bid $30,000 for the property and on June 9, 2009, entered into the purchase and sale agreement containing the deed restriction.   On an exhibit attached to the purchase agreement entitled "Intended use," appellees were asked to describe how they would use the property.   They responded, "Not sure" and "possible re-sale to another interest buyer."   Title was conveyed by a quitclaim deed on June 30, 2009.   On October 8, 2009, the appellees received conditional-use approval from Cincinnati's Office of the Zoning Hearing Examiner to "reopen the school as a charter school."   The following January, appellees, through counsel, notified the CPS school board and its chief legal counsel that the deed restriction was void as against public policy and that they intended to open a charter school in August 2010.

{¶ 4}   CPS filed a complaint for declaratory judgment and injunctive relief, seeking a declaration that the deed restriction prohibiting the use of the

2

property as a school was valid and enforceable and seeking to enjoin the appellees from taking any action toward opening a school on the property. At the time that CPS filed suit, appellees had moved forward with the school renovation pursuant to the zoning approval, investing $60,000 in rehabilitation of the building and purchasing $10,000 of school furniture, among other expenditures. Appellees sought and were granted judgment on the pleadings, and CPS's complaint was dismissed. In its order, the trial court stated that the deed restriction at issue was void as against public policy.

{¶ 5} The Court of Appeals for Hamilton County affirmed, holding that the deed restriction was void as against public policy embodied in former R.C. 3313.41(G), 151 Ohio Laws, Part V, at 8788-8789, which required public school districts to give charter school operators the first option to purchase vacant school buildings if they were "suitable for use as classroom space." *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 1st Dist. No. C-100399, 2011-Ohio-1084. The statute was amended to delete "suitable for use as classroom space" in 2011. Am.Sub.H.B. No. 153.

{¶ 6} In reaching its decision, the court of appeals concluded that "community schools having access to classroom space [is] clear Ohio public policy. And the deed restriction that sought to prevent the use of the property for educational purposes was void as against this clear policy." Id. at ¶ 9.

{¶ 7} We accepted CPS's appeal on the following proposition of law:

> The Ohio legislature has not expressed a public policy in favor of community schools over public schools with regard to a public school district's disposal of real property; to the extent any public policy has been established, it is expressly stated in R.C. 3313.41(G) and does not permit a court of law to unilaterally abridge a public school district's statutory authority to negotiate

arm's-length contract terms, including deed restrictions in a contract to sell real property to private citizens.

*Cincinnati City School Dist. Bd. of Edn. v. Conners*, 129 Ohio St.3d 1449, 2011-Ohio-4217, 951 N.E.2d 1046.

## II. Legal Analysis

### A. Legislative enactments: R.C. Chapters 3313 and 3314

{¶ 8} Ohio's school districts were created by the legislature pursuant to Article VI, Section 3 of the Ohio Constitution, which requires the General Assembly to provide for "the organization, administration and control of the public school system of the state supported by public funds." The General Assembly has provided for Ohio's boards of education under R.C. Chapter 3313. Accordingly, the board of education of each school district derives its authority to contract, and therefore, its authority to dispose of real property, from the statute. R.C. 3313.17 states, "The board of education of each school district shall be a body politic and corporate, and, as such, capable of * * * contracting and being contracted with, acquiring, holding possessing, and disposing of real and personal property * * *." The statute, in other words, grants boards of education the power to enter into contracts and to dispose of real property.

{¶ 9} Ohio boards of education are creations of statute, and their authority is derived from and strictly limited to powers that are expressly granted by statute or clearly implied therefrom. *Schwing v. McClure*, 120 Ohio St. 335, 166 N.E. 230 (1929), syllabus. A board of education is "a mere instrumentality of the state to accomplish its purpose in establishing and carrying forward a system of common schools throughout the state." *Cincinnati Bd. of Edn. v. Volk,* 72 Ohio St. 469, 485, 74 N.E. 646 (1905).

{¶ 10} In enacting R.C. 3313.17, the General Assembly gave boards of education the discretionary authority to contract with other parties in order to

administer Ohio's system of education. When a board of education is vested with discretion, that discretion should not be disturbed by the courts as long as the exercise of it is reasonable, in good faith, and not clearly shown to be an abuse of discretion. *Greco v. Roper,* 145 Ohio St. 243, 250, 61 N.E.2d 307 (1945). A board of education, however, also has a duty "to manage the schools in the public interest." *Xenia City Bd. of Edn. v. Xenia Edn. Assn.,* 52 Ohio App.2d 373, 377, 370 N.E.2d 756 (2d Dist.1977). Thus, while a board of education has the authority to contract, it must do so with the public in mind.

{¶ 11} The General Assembly also enacted legislation that placed restrictions on a board of education's authority to dispose of property. R.C. 3313.41 governs school districts' discretionary sale or donation of school buildings. The statute in effect at the time this suit was filed, former R.C. 3313.41(G)(1), 151 Ohio Laws, at 8788-8789, required that before a school district sells a school building

> suitable for use as classroom space, prior to disposing of that property under divisions (A) to (F) of this section, it shall first offer that property for sale to the governing authorities of the start-up community schools established under Chapter 3314 * * * at a price that is not higher than the appraised fair market value of that property.

This same section allowed the school district to sell the school building to parties other than a community school only "if no community school governing authority accepts the offer within sixty days." When this section was amended in 2011, the amendment deleted the "suitable for use as classroom space" requirement. Am.Sub.H.B. No. 153. Under former 3313.41(G)(2), which has since been

deleted, the same first offer requirement was required for similar property that has not been used for a year:

> When a school district board of education has not used real property suitable for classroom space * * * for one full school year * * * it shall offer that property for sale to the governing authorities of the start-up community schools * * * located within the territory of the school district* * *.

Former R.C. 3313.41(G)(2), 151 Ohio Laws, Part V, at 8789.

{¶ 12} These statutes show that the General Assembly did not intend that a board of education have an unfettered right to dispose of its property. They also indicate a legislative preference for giving charter schools the opportunity to operate out of unused public school buildings, a rational choice because charter schools are themselves " 'public schools * * * and part of the state's program of education.' " *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.,* 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 26, quoting R.C. 3314.01(B).

{¶ 13} Legislation on charter schools was adopted when the General Assembly enacted R.C. Chapter 3314 in 1997, referred to as "the Community Schools Act." Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 909, 1187. In enacting R.C. Chapter 3314, the General Assembly declared that its purposes included "providing parents a choice of academic environments for their children and providing the education community with the opportunity to establish limited experimental educational programs in a deregulated setting." Am.Sub.H.B. No. 215, Section 50.52, Subsection 2(B), 147 Ohio Laws, Part I, 2043. The General Assembly defined what it meant by community schools and explained, "A community school created under this chapter is a public school, independent of

any school district, and is part of the state's program of education." R.C. 3314.01(B).

{¶ 14} Because we acknowledge that the General Assembly has expressed a strong interest in community schools, we now turn to the deed restriction to determine whether including it in CPS's contracts violates a stated public policy.

### B. Common law of contracts and public policy

{¶ 15} The sole issue before us is the validity of a deed restriction imposed by a political subdivision that sought to prevent the use of property for educational purposes. Under well-established contract law, we recognize that contracts entered into freely and " 'fairly made will be held valid and enforced in the courts.' " *Lamont Bldg. Co. v. Court*, 147 Ohio St. 183, 184, 70 N.E.2d 447 (1946), quoting 12 American Jurisprudence, Section 149, at 641. We have reiterated the importance of this concept as it applies to education, stating, " 'The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint.' " *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381, 613 N.E.2d 183 (1993), quoting *Blount v. Smith*, 12 Ohio St.2d 41, 47, 231 N.E.2d 301 (1967). The freedom to contract is a deep-seated right that is given deference by the courts.

{¶ 16} This deference, however, is not absolute. We have observed that the " '[l]iberty of contract is not an absolute and unlimited right, but upon the contrary is always subservient to the public welfare. * * * The public welfare is safeguarded, not only by Constitutions, statutes, and judicial decisions, but by sound and substantial public policies underlying all of them.' " *J.F. v. D.B.,* 116 Ohio St.3d 363, 2007-Ohio-6750, 879 N.E.2d 740, ¶ 5, quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney,* 95 Ohio St. 64, 115 N.E. 505 (1916), syllabus. In fact, this court explained almost 200 years ago that "the right of making contracts at pleasure is a personal privilege of great value, and ought

not to be slightly restrained; but it must be restrained when contracts are attempted against the public law, general policy, or public justice." *Key v. Vattier*, 1 Ohio 132, 147 (1823). The question becomes, when is it appropriate to apply the principle of the public-policy exception so as not to infringe on the parties' rights to make contracts?

{¶ 17} While the public-policy exception has existed for over a hundred years, courts applying it have struggled to determine what public policy is. " 'Public policy' is the community common sense and common conscience extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." *Kinney*, 95 Ohio St. at 64, 115 N.E. 505. " 'Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy.' " *Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 64, quoting Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980). We have succinctly described public policy as "[a]t best, * * * an uncertain and indefinite term." *Lamont Bldg. Co.,* 147 Ohio St. at 185, 70 N.E.2d 447. The United States Supreme Court, weighing in on the matter, has stated that "the public's interest in confining the scope of private agreements to which it is not a party will go unrepresented unless the judiciary takes account of those interests when it considers whether to enforce such agreements." *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), citing *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Our duty is to determine when the public-policy exception must be recognized, but it is the "legislative branch [that] is 'the ultimate arbiter of public policy.' " *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting *State ex rel. Cincinnati*

*Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21.   We therefore must examine whether the deed restriction accomplishes a result that the state has sought to prevent or whether it accomplishes something that the state seeks to facilitate.

### C. The parties' arguments

{¶ 18} CPS argues that the public-policy exception is a narrow doctrine, not to be overused by courts and applicable only when rooted in well-established law.   The board  also asserts that the deed restriction does not hinder statutory benefits given to charter schools and notes that this specific sale was made to private citizens who only later decided to create a charter school and declared that they would not abide by the deed restriction. CPS states that R.C. 3313.41(G) does not apply to this case because the property had already passed the first-offer phase and proceeded to public auction.   The board contends that the deed restriction should be upheld, and if there is to be a public policy favoring the disposal of property to charter schools, the legislature should revise the statutes to that effect.   It points to the amendments to the Community Schools Act as evidence that the General Assembly's approach to community schools has been one of measured caution.

{¶ 19} In response, appellees argue that the deed restriction imposed by CPS is void because it hinders and impedes the public policy expressed in R.C.3313.41, favoring the transfer of school buildings to community schools. Appellees urge rejection of any contract term that frustrates this purpose. Furthermore, in advocating for application of the doctrine of public policy, appellees suggest that the public's interest in striking the deed restriction is heightened when the contract is not between private parties.  Although appellees did not purchase as representatives of a charter school, they argue that their status does not matter.   They rely on CPS's status as a political subdivision to trigger heightened scrutiny.   They also argue that the General Assembly has expressed a

clear public policy in favor of facilitating community schools' acquisition of public school buildings and in favor of allowing parental choice and educational opportunity through these schools.

{¶ 20} Deed restrictions are generally disfavored and will be "strictly construed against limitations upon * * * use, and * * * all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate." *Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581, 127 N.E.2d 754 (1955), paragraph two of the syllabus. The restriction in Section 8 of the purchase and sale agreement states:

> B. Buyer agrees not to use the Property for school purposes, and that the deed to the Property will be restricted to prohibit future use of the Property for school purposes. Such deed restriction will not apply to the Seller, and will not prevent the Seller from repurchasing any portion of the Property in the future and using the Property for school purposes.

{¶ 21} The restriction, on its face, prevents the free use of the property for educational purposes. The language thus directly frustrates the state's intention to make classroom space available to community schools, as evidenced by R.C. 3313.41(G). Furthermore, the restriction is not neutral; it seeks to thwart competition by providing that the restriction applies to all buyers except CPS itself. This consequence hinders the results that the General Assembly has created under R.C. 3313.41, 3318.08, 3318.50, 3318.52, and the Ohio Community Schools Act—that is, allowing unused school buildings to be transferred to community schools that will use the building to provide school choice.

{¶ 22} In 2001, the state established the "Community School Classroom Facilities Loan Guarantee Program" and the "Community School Classroom

Facilities Loan Guarantee Fund" to help charter schools acquire buildings at a lower cost. R.C. 3318.50 and 3318.52. The program supplies funds to charter schools to assist them with "acquiring, improving, or replacing classroom facilities for the community school by lease, purchase, remodeling of existing facilities, or any other means including new construction." R.C. 3318.50(B).

{¶ 23} In our view, the statutes reflect the General Assembly's purpose of requiring boards of education to sell unused school buildings to community schools by giving them first refusal, ensuring that the price is fair, and financially assisting them through a loan program to purchase adequate classroom space. The General Assembly continues to clarify its intent that unused public school buildings should be offered to community schools without restriction, as evidenced by the recent changes to the language of R.C. 3313.41(G), where the General Assembly removed the term "suitable for classroom space" from the law. The deed restriction in this case is at odds with these statutes. The restriction adds barriers to building purchases that the legislature seeks to prevent.

### III. Conclusion

{¶ 24} We emphasize that we continue to uphold the importance of the freedom to contract and recognize the narrowness of the doctrine on public policy. In this case, however, involving a contract between a private party and a political subdivision, there is a compelling reason to support the application of the doctrine. We therefore hold that the inclusion of a deed restriction preventing the use of property for school purposes in the contract for sale of an unused school building is unenforceable as against public policy.

{¶ 25} The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in syllabus and concurs in part and dissents in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 26} I concur in the syllabus and the bulk of the majority opinion.  I would, however, order that the opinion apply only prospectively.

{¶ 27} In this case, the school board sold property with a deed restriction.  Although no evidence on this issue was presented, based on logic and a rudimentary understanding of how real estate is valued, I am willing to presume that the deed restriction caused some diminution in the sale price.  It strikes me as unfair that the buyer should be able to buy at a reduced rate because of a deed restriction and then realize full value by having this court declare the deed restriction to be against public policy.  Essentially, the buyer has received a windfall, and the school district has not received the full value for its property.

{¶ 28} There are at least two ways to address this inequity.  We could order the transaction rescinded and allow the school district to sell the property unencumbered by the deed restriction.  Because the buyer may have already made improvements or other changes to the property, this option is not preferred.  The second option is to require the buyer to pay the school district the difference between the purchase price and the fair market value of the property without a deed restriction at the time of the sale.

_____

Frost Brown Todd L.L.C., Douglas R. Dennis, Scott D. Phillips, and Austin W. Musser, for appellant.

1851 Center for Constitutional Law and Maurice A. Thompson, for appellees.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Patrick M. Pickett, urging reversal for amicus curiae Ohio School Boards Association.

Jones Day and Chad Readler, urging affirmance for amici curiae Ohio Alliance for Public Charter Schools, School Choice Ohio, Black Alliance for

Educational Options, National Association for Public Charter Schools, and Ohio Coalition for Quality Education.

_____