[Cite as *Alotech Ltd., L.L.C. v. Barnes*, 2017-Ohio-5569.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104389**

---

## ALOTECH LIMITED L.L.C.

PLAINTIFF-APPELLEE

vs.

## KAYLA BARNES, ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-791234

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 29, 2017

**ATTORNEYS FOR APPELLANTS**

William T. Whitaker
Andrea Whitaker
William T. Whitaker Co., L.P.A.
55 East Mill Street, Suite 301
Akron, Ohio 44308


**ATTORNEYS FOR APPELLEE**

Suzanne Bretz Blum
Thacker Robinson Zinz Co., L.P.A.
2330 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, J.:

{¶1} Appellant, Audrey Black ("Ms. Black"),[1] appeals from the judgment of the common pleas court granting a motion to enforce a settlement agreement filed by appellee, Alotech Limited L.L.C. ("Alotech"). Ms. Black raises the following assignments of error for our review:

> 1. The trial court erred in enforcing a settlement agreement that is unenforceable by its own terms.
>
> 2. Enforcement of the settlement agreement is illegal and contrary to public policy and, now, is impossible.
>
> 3. Any offer or agreement to settle was revoked by appellee on terms set by appellee and acknowledged by Ms. Black.

{¶2} After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. Procedural and Factual History

{¶3} In October 2012, Alotech brought a civil action against Alotech's Chief Financial Officer, John Black ("John"), his wife, Ms. Black, and other women who were alleged to have been unjustly enriched by John's embezzlement of Alotech business funds. The complaint alleged that John violated his fiduciary duty owed to Alotech by withdrawing over $1 million from Alotech's business account for his own personal use. Alotech further alleged that John used Alotech's business funds to purchase over $336,740.67 in "extravagant gifts" for the defendant women he met on an online website.

---

[1] Alotech's claims against defendant's Kayla Barnes and Kayla Barnes L.L.C. were dismissed on June 9, 2015.

**{¶4}** In January 2013, Ms. Black's mother, Inez Urbancic, created a living trust (the "Urbancic Trust") that made Ms. Black's daughter, Courtney Black ("Courtney"), the sole beneficiary. Among the trust's limited assets is real property located in Euclid, Ohio (the "Urbancic Trust asset"). In June 2015, Inez Urbancic passed away, and Ms. Black was appointed as the Successor Trustee pursuant to the terms of the Urbancic Trust.

**{¶5}** On April 11, 2016, Ms. Black met with Alotech representatives in an effort to resolve the pending litigation against her. At the conclusion of the meeting, the parties entered into a handwritten settlement agreement whereby Alotech agreed to dismiss its claims against Ms. Black in exchange for Ms. Black's agreement to (1) transfer title of the Urbancic Trust asset to Alotech, (2) pay Alotech $15,000 within 15 days of signing the agreement, and (3) pay Alotech $150 per month for a period of 100 months. The agreement provides, in relevant part:

> Whereas, Alotech Ltd. and Audrey Black are parties to this agreement.

> Whereas, Audrey Black and Alotech wish to resolve litigation in Cuyahoga County Common Pleas Court, Case No. CV-12-791234 (the "Case").

> Whereas, Ms. Audrey Black is the trustee of the Inez Urbancic Living Trust and her daughter Courtney Black is the beneficiary.
> Whereas, Courtney Black wishes Audrey Black, as trustee to transfer certain assets of the Inez Urbancic Living Trust to Alotech Ltd. and has stated so by her signature at the end of this Agreement.

> The Parties to this agreement hereby agree as follows:

> Audrey Black will transfer title of [the trust real property] to Alotech Ltd. within 15 days of the signing of this Agreement.

Audrey Black will pay Alotech Ltd. $15,000 within 15 days of the signing of this Agreement.

Audrey Black will pay Alotech Ltd. $15,000 additional over a period of 100 months in payments of $150 per month payable to Alotech Ltd.

* * *

In exchange for this consideration, Alotech Ltd. will dismiss and resolve all claims against Audrey Black that have been or could have been asserted in the Case.

{¶6} The settlement agreement was signed by Ms. Black and Alotech president, John Grassi ("Grassi"). The settlement further contained an unsigned signature block for Courtney.

{¶7} The following day, Ms. Black contacted Alotech and indicated that she was unable to move forward with the settlement agreement because Courtney, the sole beneficiary of the Urbancic Trust, refused to give Ms. Black permission to transfer the Urbancic Trust asset to Alotech. Despite the language contained in the settlement agreement, Courtney did not sign the agreement.

{¶8} On April 14, 2016, Alotech filed a motion to enforce the settlement agreement, arguing that the terms of the Urbancic Trust allowed Ms. Black to transfer the assets of the trust to Alotech without Courtney's permission. Ms. Black filed an opposition motion, asserting that Courtney's approval of the settlement agreement's terms was a condition precedent to enforcement of the agreement. On April 22, 2016, the trial court granted Alotech's motion to enforce the settlement agreement and dismissed all claims asserted against Ms. Black. The trial court found that (1) Ms. Black had the

"express authority" under the terms of the Urbancic Trust "to transfer property out of the trust to Alotech without Courtney Black's consent," and (2) the "whereas" clause concerning Courtney's "wishes" are "not sufficient to constitute a condition precedent to the settlement agreement."

{¶9} Ms. Black now appeals the trial court's judgment.

## II.   Law and Analysis

{¶10} For the purposes of judicial clarity, we review Ms. Black's assignments of error out of order.   In her second assignment of error, Ms. Black argues "enforcement of the settlement agreement is illegal and contrary to public policy and, is now impossible."

{¶11} Settlement agreements are generally favored in the law.   *Szmania v. Szmania*, 8th Dist. Cuyahoga No. 90346, 2008-Ohio-4091, ¶ 8, citing *Vasilakis v. Vasilakis*, 8th Dist. Cuyahoga No. 68763, 1996 Ohio App. LEXIS 2569 (June 20, 1996). "It is axiomatic that a settlement agreement is a binding contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party."   *Continental W. Condo. Unit Owner's Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996).   Thus, a settlement agreement is an issue of contract law, requiring a meeting of the minds as well as an offer and acceptance in order to create a binding contract.   *Natl. Court Reporters, Inc. v. Krohn & Moss, Ltd.*, 8th Dist. Cuyahoga No. 95075, 2011-Ohio-731, ¶ 10.   As with any other kind of contract, courts presume that the intent of the contracting parties resides in

the language they choose to employ in the agreement. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

**{¶12}** When parties enter into a settlement agreement, the agreement cannot be unilaterally repudiated by one of the parties. *Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist.1995), citing *Spercel v. Sterling Indus., Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972). A settlement agreement does not have to be fair and equitable to be binding and enforceable, so long as it is not procured by fraud, duress, overreaching or undue influence. *Vasilakis*, 1996 Ohio App. LEXIS 2569 at *5-6. Contracts, including settlement agreements, can be unfair or favor one side over the other. *Walther* at 383.

> The standard of review to be applied to rulings on a motion to enforce a settlement agreement depends primarily on the question presented. *Chirchiglia v. Adm. Bur. Of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist. 2000). If the question is a factual or evidentiary one, the trial court's finding will not be overturned if there was sufficient evidence to support such finding. *Id*. However, if the issue is a question of contract law, reviewing courts must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Id*.

*Estate of Lytle v. Wilson*, 8th Dist. Cuyahoga No. 101522, 2015-Ohio-108, ¶ 9.

**{¶13}** In this case, Ms. Black raises a question of law, arguing that the settlement agreement was unenforceable "as void against Ohio public policy." We agree.

**{¶14}** The Supreme Court of Ohio has repeatedly stated that contracts entered into freely and fairly are enforceable. *Cincinnati City School Dist. Bd. of Edn. v. Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, ¶ 15. Further, "[t]he freedom to

contract is a deep-seated right that is given deference by the courts." *Id.* However, this deference is not absolute. *Id.* at ¶ 16. In *Conners*, the court observed

> "that the '[l]iberty of contract is not an absolute and unlimited right, but [on] the contrary is always subservient to the public welfare. * * * The public welfare is safeguarded, not only by Constitutions, statutes, and judicial decisions, but by sound and substantial public policies underlying all of them.'"

*Id.*, quoting *J.F. v. D.B.*, 116 Ohio St.3d 363, 2007-Ohio-6750, 879 N.E.2d 740, ¶ 5. Thus, "'the right of making contracts * * * must be restrained when contracts are attempted against the public law, general policy, or public justice.'" *Id.*, quoting *Key v. Vattier*, 1 Ohio 132, 147 (1823).

{¶15} As in *Conners*, this court has held that, "[a] court may refuse to enforce a contract when it violates public policy." *DeVito v. Autos Direct Online, Inc.*, 8th Dist. Cuyahoga No. 100831, 2015-Ohio-3336, ¶ 37, citing *Marsh v. Lampert*, 129 Ohio App.3d 685, 687, 718 N.E.2d 997 (12th Dist.1998); *Garretson v. S.D. Myers, Inc.*, 72 Ohio App.3d 785, 788, 596 N.E.2d 512 (9th Dist.1991). A "public policy analysis requires the court to consider the impact of such arrangements upon society as a whole." *Id.*, citing *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, ¶ 63 (9th Dist.). The Supreme Court explained:

> "'Public policy' is the community common sense and common conscience extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like.' 'Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good.'"

*Conners* at ¶17, quoting *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney*, 95 Ohio St. 64, 64, 115 N.E. 505 (1916); *Eagle* at ¶ 64; Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980). Accordingly, "contracts which bring about results which the law seeks to prevent are unenforceable as against public policy." *Id*.

{¶16} Ultimately, it is the legislative branch that is the arbiter of public policy, and it is the duty of the courts to determine when the public-policy exception must be recognized. *Conners*, 132 Ohio St.3d 468, 2012-Ohio-2447, 974 N.E.2d 78, at ¶ 17. We, therefore, must examine whether enforcement of the settlement agreement accomplishes a result that the state has sought to prevent or whether it accomplishes something that the state seeks to facilitate.

{¶17} Pursuant to R.C. 5808.02(A), a "trustee shall administer the trust solely in the interests of the beneficiaries." As trustee, Ms. Black owed the trust and Courtney "a fiduciary duty of the highest order" to act with "the utmost fidelity." *In re Trusteeship of Stone*, 138 Ohio St. 293, 302, 34 N.E.2d 755 (1941).

> It is well established that "so long as a trustee executes the trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor." *Hopkins v. Cleveland Trust Co.*, 163 Ohio St. 539, 127 N.E.2d 385 (1955), paragraph one of the syllabus. Nevertheless, even where a trust instrument confers broad authority upon a trustee, a trustee cannot "take advantage of liberal provisions of a trust instrument to relieve himself from the legal responsibility of a fiduciary under the law." *Saba v. Fifth Third Bank of N.W. Ohio*, 6th Dist. Lucas No. L-01-1284, 2002-Ohio-4658, ¶ 29, quoting *In Re Estate of Binder*, 137 Ohio St. 26, 43-44, 27 N.E.2d 939 (1940). Thus, in addition to the instrument creating the trust, the authority of a trustee is limited by statutory and common law. *Id*.

*Biddulph v. Delorenzo*, 8th Dist. Cuyahoga No. 83808, 2004-Ohio-4502, ¶ 27.

**{¶18}** As a fiduciary, Ms. Black was required to "exercise the utmost care not to divert the funds entrusted to [her] from the purposes of the trust, and * * * is practically an insurer against any personal gain or enrichment to [her]self from funds entrusted to [her] solely for the benefit of another." *Caswell v. Lenihan*, 163 Ohio St. 331, 337-338, 126 N.E.2d 902 (1955). In addition,

> [s]ince a trustee is a fiduciary of the highest order and is charged with the utmost fidelity to his trust, he must refrain from creating situations where his own interests are brought into conflict with those of the trust, and from doing those things which would tend to interfere with the exercise of a wholly disinterested and independent judgment. In accepting a trust, the trustee is presumed to know the obligations and limitations connected with his high office and, if he transgresses, must abide the consequences.

*Manchester v. Cleveland Trust Co.*, 95 Ohio App. 201, 211, 114 N.E.2d 242 (8th Dist.1953).

**{¶19}** It is undisputed in this matter that Ms. Black's daughter, Courtney, is the sole beneficiary of the Urbancic Trust. Viewing the four corners of the settlement agreement, it is further evident that Courtney, although not a party to the agreement, did not sign the agreement. Under the express terms of the agreement, Courtney's signature would have "stated" her "wishes" that "[Ms.] Black, as trustee, transfer certain assets of the Inez Urbancic Living Trust to Alotech Ltd."

**{¶20}** Paragraph 5(C) of the Urbancic Trust sets forth the trusts intended purpose, stating, in relevant part:

> The Trustee shall distribute *for the benefit of each beneficiary* so much of the income of the trust * * * as, in his/her sole discretion, the trustee may deem necessary or proper for his or her support, care, health, welfare and education, giving priority to a college education.

(Emphasis added.)

{¶21} Despite the foregoing provision, the trial court's order granting Alotech's motion to enforce the settlement agreement relied extensively on Paragraph 7(E) of the Urbancic Trust. The provision provides that Ms. Black, as Trustee, "may sell, convey, mortgage, pledge, lease, control and/or manage any property of the Trust, including limitation sale of real property." The court determined that the provision "expressly gives [Ms.] Black the authority to transfer property out of the trust to Alotech without Courtney Black's consent."

{¶22} We agree with the trial court's determination that Paragragh 7(E) permitted Ms. Black to manage the trust assets without Courtney's consent. However, we find the trial court's narrow reliance on Paragraph 7(E) ignored Ms. Black's fiduciary responsibilities as Trustee, and the express purpose of the Urbancic Trust. While Paragraph 7(E) provided Ms. Black with broad discretion, it did not permit her to manage the trust in a manner that did not serve the best interests of Courtney, the sole trust beneficiary. Ms. Black was not entitled to take "advantage of liberal provisions of [the] trust instrument" in an effort "to relieve [her]self from the legal responsibility of a fiduciary under the law." *See Biddulph,* 8th Dist. Cuyahoga No. 83808, 2004-Ohio-4502, at ¶ 27. Accordingly, the trial court's extensive reliance on the discretionary rights afforded to Ms. Black under Paragraph 7(E) was insufficient. Further considerations were necessary.

**{¶23}** Turning to the mandates of R.C. 5808.02(A), we find, under the circumstances presented in this case, that Ms. Black's obligations under the settlement agreement did not serve Courtney's best interests and, thereby, constituted a violation of her fiduciary duties as Trustee. As stated, Ms. Black had an absolute fiduciary duty to act in the best interest of the trust beneficiary. Contrary to her fiduciary duty, however, Ms. Black agreed to transfer valuable trust assets to Alotech in an effort to settle personal financial claims levied against her. In our view, Ms. Black's actions depleted the trust property, irreparably harmed the Trust's beneficiary, and created a situation where her own interests directly conflicted with the express purpose of the Urbancic Trust.

**{¶24}** For these reasons, we find enforcement of the settlement agreement would bring about a result the General Assembly sought to prevent by enacting R.C. 5808.02(A). *See Colangelo v. Cashelmara Co.*, 8th Dist. Cuyahoga Nos. 57581 and 57871, 1990 Ohio App. LEXIS 5036, *3 (Nov. 21, 1990) ("An agreement is against public policy if it * * * violates a public statute."). While we recognize the importance of the freedom to contract, this case provides a compelling reason to support the application of the public-policy doctrine. Accordingly, we find the settlement is unenforceable as against public policy.

**{¶25}** The trial court erred by granting Alotech's motion to enforce the settlement agreement. The trial court's judgment relied on a misconstruction of the law regarding Ms. Black's rights and responsibilities as Trustee. Ms. Black's second assignment of

error is sustained. The remaining assignments of error are rendered moot by our resolution of the second assigned error.

{¶26} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
ANITA LASTER MAYS, J., CONCUR