JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Dutch Maid Logistics, Inc. (Dutch Maid), appeals the trial court's grant of summary judgment in favor of defendant-appellee, Acuity aka Acuity, A Mutual Insurance Co. (Acuity). Defendant-appellant, Penske Truck Leasing Company (Penske), appeals its dismissal, as well as the trial court's grant of summary judgment in favor of Acuity. After reviewing the facts of the case and the pertinent law, we affirm.
 {¶ 2} Because they are interrelated, we address the assignments of error together where appropriate.
 {¶ 3} On August 17, 2001, one of Dutch Maid's employees was driving a semi-truck that Dutch Maid leased from Penske. While driving on a Michigan interstate, he came upon lines of traffic stopped in his direction. Unfortunately, he was looking elsewhere and did not see the traffic. When he glanced up, he saw the front of his truck "rising" up from the road. A horrific accident ensued. The next thing he knew, someone was pounding on his truck door. Id. He had caused an accident. Id.
 {¶ 4} In all, five parties filed claims against Dutch Maid as a result of the accident: two for wrongful death and three for severe bodily injuries sustained as a result of the crash. Dutch Maid's insurer, Acuity, tendered a defense to the claims and appointed lawyers to handle the claims. At some point, the parties disagreed *Page 4 
about the amount of the policy limits in Dutch Maid's business auto policy with Acuity.
 {¶ 5} On April 23, 2003, Dutch Maid filed suit, seeking declaratory judgment on the language of the policy and asserting a bad faith claim against Acuity for failing to offer the $5 million limit that Dutch Maid believes is inherent in the policy language.
 {¶ 6} On September 29, 2003, Acuity filed a motion for summary judgment on the complaint, seeking a declaration that it had satisfied its contractual obligations.
 {¶ 7} On October 27, 2003, Dutch Maid opposed Acuity's motion and filed a cross-motion for summary judgment.
 {¶ 8} On November 21, 2003, Acuity filed its motion for summary judgment on the cross-claims and counterclaims.
 {¶ 9} On July 28, 2004, the trial court granted summary judgment in favor of Acuity on coverage and against Dutch Maid on its declaratory judgment claims.
 {¶ 10} On June 6, 2005, the trial court granted summary judgment in favor of Acuity on Dutch Maid's bad faith claims.
 {¶ 11} On July 29, 2008, the trial court issued a final order disposing of all remaining claims in the case, including Penske's cross-claim for defense costs and indemnification.
 {¶ 12} The instant appeals followed.
 {¶ 13} Dutch Maid's first and third assignments of error read:
 {¶ 14} Assignment of Error One *Page 5 
 "The trial court erred in denying summary declaratory judgment to Plaintiff-Appellant and granting Summary Declaratory Judgment to Defendant-Appellee, Acuity on coverage."
 Assignment of Error Three
 "The trial court erred in granting summary judgment to the Defendant-Appellee on bad faith."
 {¶ 15} In Ohio, appellate review of summary judgment is de novo.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336;Zemcik v. LaPine Truck Sales Equip. Co. (1998), 124 Ohio App.3d 581,585. The Ohio Supreme Court stated the appropriate test in Zivich v.Mentor Soccer Club (1998), 82 Ohio St.3d 367, 1998-Ohio-389, as follows:
 "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107." Zivich at 369-370.
 {¶ 16} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E); see Mootispaw v.Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389. Doubts must be resolved in favor *Page 6 
of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-359, 1992-Ohio-95.
 {¶ 17} We agree with the trial court that there are no factual disputes before us. Thus, the disposition of this case rests upon the construction of the language in the various provisions of an insurance contract and the law applicable to the undisputed facts.
 {¶ 18} When construing an insurance contract, the primary objective is a "`reasonable construction [of the contract] in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.'" King v. Nationwide Ins.Co. (1988), 35 Ohio St.3d 208, 211, quoting Dealers Dairy Products Co.v. Royal Ins. Co. (1960), 170 Ohio St. 336, 339.
 {¶ 19} A contract with clear and unambiguous terms leaves no issue of fact and must be interpreted as a matter of law. Inland Refuse TransferCo. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. Where ambiguity exists, however, we must strictly construe those terms against the insurer and liberally in favor of the insured.King at 211, citing Faruque v. Provident Life Acc. Ins. Co. (1987),31 Ohio St.3d 34, syllabus; Thompson v. Preferred Risk Mut. Ins. Co.
(1987), 32 Ohio St.3d 340, 342, and cases cited therein. But, "[j]ust because the policy does not define a term does not mean that the policy is ambiguous." Chicago Title Ins. Co. v. Huntington Natl. Bank,87 Ohio St.3d 270, 273, 1999-Ohio-62. (Citation omitted.)
A. The Policy Language *Page 7 
 {¶ 20} The language at issue in Section II (A) of the policy states in pertinent part:
 "We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."
 {¶ 21} Section II (C) of the policy limits the insurance available under the policy as follows:
 "Regardless of the number of covered autos, insureds, premiums paid, claims made or vehicles involved in the accident, the most we will pay for the total of all damages *** resulting from any one accident is the Limit of Insurance for Liability Coverage shown in the Declarations. All bodily injury *** resulting from continuous or repeated exposure to the same conditions will be considered as resulting from one accident."
 {¶ 22} Section V is the definition section and contains the following definitions:
 "A. `Accident' includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage.
 C. Bodily injury' means bodily injury, sickness or disease sustained by a person including death resulting from any of these."
 {¶ 23} The Limit of Insurance for Liability Coverage in the Declarations page of the policy at issue is $1 million per accident. Although five claims were filed, Acuity maintains that, for purposes of insurance coverage, there was but one accident: a single train of events caused by Dutch Maid's negligence that resulted in continuous or repeated exposure to the same conditions. Dutch Maid, for its part, argues that *Page 8 
because five persons were injured or killed in the crash, the bodily injury definition under Section V (C) of the policy dictates that there were really five separate accidents. Dutch Maid argues that under the policy, bodily injury must necessarily happen to a person, and since there were five claims resulting from bodily injuries, there were five accidents.
 {¶ 24} These arguments represent what avid readers of insurance policies commonly call "cause" and "effect" interpretations, respectively. The question we are called upon to address is this: Which is the appropriate law in determining the number of accidents that occurred under the terms of Dutch Maid's motor vehicle policy?
 {¶ 25} Few Ohio courts have addressed this issue. In determining the number of accidents or occurrences under liability policies, courts have generally applied one of three general approaches: the policy limits clause refers to the cause or causes of the accident or occurrences (the causation view); the policy limits clause refers to effect or result of the accident or occurrence (the effect view); or the policy limits clause refers to the liability triggering event (the liability triggering view). Banner v. Raisin Valley, Inc. (1998),31 F.Supp.2d 591, 593. (Internal citations omitted.)
 {¶ 26} Those courts, both within and outside of Ohio, that have addressed this issue uniformly follow the "causation" view when, as here, the term "accident" includes the unambiguous phrase "continuous or repeated exposure to the same conditions" when referring to multiple parties involved in the same continuous course of events. Id. at 592; see, also, Progressive Preferred Ins. Co. v. Derby (2001), *Page 9 
Fulton App. No. F-01-002; Greater Cincinnati Chamber of Commerce v.Ghanbar, 157 Ohio App.3d 233, 2004-Ohio-2724; Greaves v. State Farm Ins.Co. (C.A.D.C. 1997), 984 F.Supp. 12; Scottsdale Ins. Co. v.Robertson (2003), 338 Ill.App.3d 397, 788 N.E.2d 279, 285; Haulers Ins.Co. v. Wyatt (S.D.Mo. 2005), 170 S.W.3d 541. Acuity's policy limits language is phrased in just this way.
 {¶ 27} Dutch Maid urges this court to rely on Nationwide Mutual Ins.Co. v. Godwin, 11th Dist. No. 2005-L-183, 2006-Ohio-4167, in reversing the trial court's judgment. We decline. Nationwide is factually distinguishable from the case at bar in that it involved policy terms "accident" and "occurrence" that were left undefined by the drafters. Having no language to rely on in the policy, the Eleventh District construed such terms against the drafters and in favor of the insureds. Here, the policy terms are defined; the only discrepancy is how those terms should be applied. Therefore, Nationwide is inapplicable to these facts.
 {¶ 28} Although Dutch Maid argues that every instance of bodily injury constitutes a separate occurrence under the policy, we find that the language of the policy acts as a qualitative, rather than quantitative, limitation on premium payment. Dutch Maid's argument that the bodily injury language to "a person" in the Acuity policy requires that the policy limits be made available to each of the five claimants under the Acuity policy requires a forced and unreasonable interpretation, especially in light of the policy language at Section II (C) — the policy limits section. This language expressly states that all bodily injuries will be considered as one accident, and limiting payments to the amount stated on the declarations page, regardless of *Page 10 
the number of covered autos, insureds, premiums paid, claims made, or vehicles involved in the accident.
 {¶ 29} A plain reading of the policy language establishes that the policy defines an "accident" as one encompassing as many vehicles and injuries as caused by the same tortfeasor. The trial court, in rendering its decision, correctly concluded that there was but one continuous accident that caused all the bodily injury claims that flowed from it.
 {¶ 30} In making this determination, we are mindful of Cincinnati Ins.Co. v. ACE INA Holdings, Inc., 175 Ohio App.3d 266, 2007-Ohio-5576, which held inter alia that "calculating the number of occurrences under an insurance policy, blanket judicial application of any one test (cause or effect) could frustrate the contracting companies' intent." Our reading of the Acuity policy is consistent with this approach. A simple, plain reading of the contract reveals that its drafters included "cause" language in it, not "effect" language. The trial court did not err in applying the meaning of that language to limit the policy to $1 million in the aggregate.
 {¶ 31} Since the trial court properly granted summary judgment on the issue of coverage, Dutch Maid's third assignment of error is moot. Because Acuity's adherence to the policy language in denying additional coverage was not only reasonably justified, but correct under the law, Dutch Maid's bad faith claim is baseless. Dutch Maid's first and third assignments of error are overruled.
 {¶ 32} Dutch Maid's second assignment of error reads as follows: *Page 11 
 "The trial court erred in denying plaintiff-appellant meaningful discovery from the defendant-appellee before granting summary judgment on both coverage and bad faith."
 {¶ 33} We review a trial court's discovery orders under an abuse of discretion standard. Brzozowski v. Univ. Hosps. Health Sys., Cuyahoga App. No. 85097, 2005-Ohio-2628. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." Id. at ¶ 8, quotingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217. "An abuse of discretion demonstrates `perversity of will, passion, prejudice, partiality, or moral delinquency.'" Brzozowski at ¶ 8, quoting Pons v. Ohio State Med.Bd., 66 Ohio St.3d 619, 621, 1993-Ohio-122. When applying the abuse of discretion standard, the court may not substitute its judgment for that of the trial court. Id.
 {¶ 34} At the outset, we note that trial courts have a greater ability to assess the parties' ability and willingness to cooperate in discovery than appellate courts, and hence have broad discretion in controlling the conduct of discovery and the issuing of sanctions for violations.Cheek v. Granger Trucking (Nov. 1, 2001), Cuyahoga App. No. 78805. In its appeal, Dutch Maid argues that the trial court facilitated Acuity's failure to provide meaningful discovery to it before the trial court granted summary judgment in Acuity's favor.
 {¶ 35} However, as the trial court correctly noted, the underlying facts of the case were never in dispute; the case is one of simple policy interpretation: the declaration of available coverage under the Acuity policy. Policy interpretation is a *Page 12 
legal issue for the court to decide. Gomolka v. State Auto Mut. Ins.Co., (1982), 70 Ohio St.3d 166, 167.
 {¶ 36} Although Dutch Maid claims prejudicial error because the court reconsidered its entry compelling Acuity to produce certain of its claims file documents in relation to Dutch Maid's bad faith claim, this claim lacks merit. Because any bad faith claim hinged on the initial determination of the coverage issues, no discovery on this issue was necessary until the coverage issues were resolved. Since coverage was resolved in favor of Acuity, no discovery on Dutch Maid's bad faith claim was necessary.
 {¶ 37} What is more, a review of the record reveals that the bad faith claim was bifurcated on September 17, 2003, so the underlying coverage issues could be addressed first. Dutch Maid never opposed this motion.
 {¶ 38} Since the very purpose of bifurcation was to address coverage first, the court did not abuse its discretion in bifurcating the bad faith claim and denying Dutch Maid's motion to compel discovery on the bad faith issue. State ex rel. Rathole v. Smith, 151 Ohio App.3d 289,302, 2002-Ohio 7328. Dutch Maid's argument that it was entitled to discovery on its bad faith claim before the court decided the coverage issue on summary judgment is without merit.
 {¶ 39} Likewise, Dutch Maid's argument that it was entitled to discovery on its bad faith claim after Acuity prevailed on coverage is without merit. The bad faith claim posed one legal question: Whether Acuity's position was "reasonably *Page 13 
justified?" Zoppo v. Homestead Ins., 71 Ohio St.3d 552, 1994-Ohio-461, at syllabus.
 {¶ 40} In its June 6, 2005 entry denying further discovery on the bad faith claim, the trial court noted that the key issue was coverage — a legal issue, not a factual issue requiring copious amounts of discovery. Therefore, the court properly denied further discovery on Dutch Maid's bad faith claim since it had already determined the coverage issue in favor of Acuity.
 {¶ 41} Dutch Maid's second assignment of error is overruled.
 {¶ 42} Penske's assignments of error read:
 Assignment of Error One
 "The trial court erred in granting summary judgment to Appellee Acuity."
 Assignment of Error Two
 "Assuming arguendo that the trial court did not grant summary judgment to Appellee Acuity, then it improperly dismissed Penske's cross claim under Civ. R. 41."
 {¶ 43} In its first assignment of error, Penske argues simply that Acuity did not meet its burden of proof on the coverage issue. Penske argues that since the policy contains the phrase "a person," the $1 million limits should be available for each of the five claimants. Having already determined that the trial court properly ruled on the coverage issue, Penske's assignments of error are moot. We cannot, as Penske urges, "assume arguendo that the trial court did not grant summary judgment to *Page 14 
Acuity"; the trial court properly granted summary judgment in favor of Acuity on all claims.
 {¶ 44} Penske's assignments of error are overruled.
Judgment affirmed.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and LARRY A. JONES, J., CONCUR. *Page 1