[Cite as *Benton Village Condominium Owner's Assn. v. Holdings, JRG Ltd.*, 2024-Ohio-1990.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BENTON VILLAGE CONDOMINIUM
OWNERS' ASSOCIATION, INC.,                :

      Plaintiff-Appellee,                :

      v.                :

HOLDINGS, JRG LTD., ET AL.,                :

      Defendants-Appellants.                :

No. 113357

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 23, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-969755

---

### *Appearances:*

Doucet Co., LPA, and Josiah C. Collier, *for appellee.*

Buckley King LPA, Charles P. Royer, and Deborah D. Zielinski, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Holdings, JRG Ltd. ("appellant"), appeals from the trial court's order granting summary judgment in favor of plaintiff-appellee, Benton Village Condominium Owners' Association, Inc. ("Benton Village" or the "association"). Appellant raises the following assignment of error for review:

The trial court improperly granted summary judgment for [Benton Village] in the court's October 19, 2023 decision.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} Benton Village is a condominium association operating on behalf of the Benton Village Condominium ("the condominium") located in Euclid, Ohio. Appellant is the record owner of a unit within the condominium.

{¶ 4} Property owners within the condominium are subject to the association's "Declaration of Condominium Ownership for Benton Village Condominium" ("the Declaration") and the "Bylaws of Benton Village Owners Association, Inc." ("the Bylaws").

{¶ 5} Relevant to this appeal, the Declaration and Bylaws contain various provisions governing the property owners' obligation to pay their "appropriate share" of common expenses and "assessments for the maintenance, repair, and insurance of the common areas and facilities." If an owner fails to pay the mandated charges, the Declaration permits the association to obtain a certificate of lien. The relevant provision, titled "Assessments and Lien of Association," states as follows:

> The Association shall have a lien upon the estate or interest in any family unit of the owner thereof * * * for the payment of the portion of the common expenses chargeable against such family unit which remain unpaid for ten (10) days after the same have become due and payable from the time a certificate therefore * * * is filed with the Recorder of Cuyahoga County, Ohio[.]

Declaration, Article XIII, Section D. In turn, Article V, Section 8, of the Bylaws, titled "Remedies for Failure to Pay Assessments," provides the association with an avenue of equitable relief, stating:

> If an owner is in default in the monthly payment of charges or assessments for thirty (30) days, the members of the Board of Managers may bring suit for and on behalf of themselves and as representatives of all owners, to * * * foreclose the lien therefor as provided in the Declaration. There shall be added to the amount due, the costs of said suit, together with the legal interest and reasonable attorney's fees to be fixed by the Court.

{¶ 6} In March 2021, Benton Village recorded a certificate of lien against appellant in the Cuyahoga County Recorder's Office. The lien was obtained to secure payment for unpaid condominium fees in the amount of $1,035.72 "plus any unpaid interest, administrative late fees, enforcement assessments, collection costs, attorney's fees and paralegals' fees, all in accordance with the provisions of the Declaration and/or Ohio law."

{¶ 7} In April 2022, Benton Village filed a civil complaint against appellant in Cuyahoga C.P. No. CV-22-962100, seeking to foreclose on the recorded lien pursuant to R.C. 5311.18. On September 12, 2022, however, the case was dismissed without prejudice due to Benton Village's failure to appear at a scheduled hearing.

{¶ 8} Benton Village refiled the foreclosure complaint against appellant in October 2022, in Cuyahoga C.P. No. CV-22-969755. The complaint sought judgment in the amount $11,408.62 for unpaid assessments, plus interest, court costs, and attorney fees. Benton Village also reserved its right to recover all assessments incurred during the pendency of the action.

{¶ 9} In February 2023, appellant filed an answer and asserted counterclaims for discharge of lien, declaratory judgment, and breach of contract.

{¶ 10} Following unsuccessful settlement proceedings, Benton filed a motion for summary judgment in August 2023. Benton argued it was entitled to judgment as a matter of law, stating:

> [N]o genuine issue of material fact appears in the record regarding its subsisting lien, [and] any interest in the subject real property belonging to Holdings, JRG LTD. is subject to judgment and a decree of foreclosure in favor of the association.

The owed expenses and fees continued to accumulate during the pendency of the action. Accordingly, Benton Village sought "the total sum due and owing, including reasonable attorney fees and costs," in the amount of "$22,059.28 as of August 14, 2023."

{¶ 11} Benton Village submitted the following evidence in support of its motion for summary judgment: (1) the certificate of lien filed with Cuyahoga County's Recorder's Office; (2) a copy of the Declaration and Bylaws; (3) the affidavit of Benton Village's acting president, Harold Ehretsman ("Ehretsman"); and (4) the affidavit of Benton Village's designated counsel, Charles P. Royer, Esq. ("Attorney Royer").

{¶ 12} Ehrestsman's affidavit incorporated an itemized list of accounting "reflecting the current amount of indebtedness owed by [appellant]" in the amount of $22,059.28 for "monthly assessment fees and enforcement costs." (Ehretsman aff. ¶ 7-8.) The list of accounting reflects all unpaid fees and expenses incurred by

appellant between November 1, 2020, and August 15, 2023. The arrearage owed by appellant included authorized attorney fees in the amount of $12,414.10 for approximately 86 hours of legal work as of August 14, 2023. (Attorney Royer aff. ¶ 8.) Attorney Royer averred that the legal fees were reasonable and necessary under the circumstances, stating:

> 13. That I believe the hourly rate billed to the Association is reasonable as attorney fees were billed to the Association at the rate of $140/hr. regular time and $170/hr. for court time;
>
> 14. That, based on my professional knowledge regarding condominium and home association law practices in Cuyahoga County and Northeast Ohio, firms or attorneys practicing in this area regularly charge $200-$250 an hour for similar services;
>
> 15. That the hours expended on this case were reasonable and made necessary due to the nature of the case, the defendant's filing of an answer and counterclaim, discovery, a number of court appearances and the filing of dispositive motions[.]

(*Id*. at ¶ 13-15.) Attorney Royer also provided a brief description of the legal services rendered on behalf of Benton Village, and the precise amount charged for each service is detailed in the list of accounting attached to Ehretsman's affidavit. Finally, Attorney Royer clarified that the requested attorney fees did not include work performed in the previously dismissed case. (*Id*. at ¶ 9, 18.)

{¶ 13} In September 2023, appellant opposed Benton Village's motion for summary judgment and filed its own motion for summary judgment. Collectively, appellant argued that there remained genuine issues of material fact to be resolved at a trial, including (1) whether Benton Village satisfied the conditions precedent to foreclosure under the Declaration and Bylaws, (2) whether Benton Village failed to

mitigate its damages by rejecting "appellant's offer to make a substantial payment," and (3) whether the attorney fees sought by Benton Village were reasonable or appropriate. Appellant's motion was supported by (1) the affidavit of appellant's authorized representative, Robert D. Bruce-Bey ("Bruce-Bey"); (2) multiple correspondences between appellant and Benton Village; and (3) copies of account statements dated March 29, 2021, and April 11, 2022.

{¶ 14} In October 2023, the trial court issued a decision granting summary judgment in favor of Benton Village and against appellant. The trial court stated, in relevant part:

> The court finds that there is no genuine issue as to any material fact and that the [Benton Village] is entitled to a judgment and decree of foreclosure as a matter of law. The court further finds that reasonable minds can come to but one conclusion and that [Benton Village]'s motion for summary judgment on its complaint is granted. [Benton Village]'s motion for summary judgment on the counterclaim is granted. [Defendant]'s motion for summary judgment is denied.

> There is due [Benton Village] on its certificate of lien set forth in the complaint, as well as additional costs and attorney's fees incurred since the complaint was filed, upon the evidence adduced, an unpaid arrearage of $22,059.28 as of August 14, 2023, for which sum judgment is hereby rendered in favor of [Benton Village] and against [defendant].

> * * *

> Benton Village obtained and perfected what remains a good and valid condominium lien on [the property]. * * * No party has paid, or caused to be paid, the condominium association lien and, by reason of non-payment, a decree of foreclosure is granted to [Benton Village]. As a consequence, the association is entitled to have the equity of redemption and dower of all said defendants in and to said premises foreclosed.

{¶ 15} Appellant now appeals from the trial court's judgment.

## II. Law and Analysis

{¶ 16} In the sole assignment of error, appellant argues the trial court erred by granting summary judgment in favor of Benton Village on its complaint for foreclosure.[1] Appellant contends that "Benton Village did not establish that it was entitled to foreclosure beyond a genuine issue of material fact."

### A. Standard of Review

{¶ 17} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).

{¶ 18} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's

---

[1] Appellant does not present any arguments concerning the trial court's resolution of its counterclaims.

response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein,* 76 Ohio St.3d 383, 667 N.E.2d 1197 (1996).

## B. Foreclosure on a Condominium Lien

{¶ 19} Consistent with the language contained in Benton Village's Declaration and Bylaws, R.C. 5311.18(A) creates a statutory lien in a condominium unit owners association under the following circumstances:

> (1) Unless otherwise provided by the declaration or the bylaws, the unit owners association has a lien upon the estate or interest of the owner in any unit and the appurtenant undivided interest in the common elements for the payment of any of the following expenses that are chargeable against the unit and that remain unpaid for ten days after any portion has become due and payable:
>
> (a) The portion of the common expenses chargeable against the unit;
>
> (b) Interest, administrative late fees, enforcement assessments, and collection costs, attorney's fees, and paralegal fees the association incurs if authorized by the declaration, the bylaws, or the rules of the unit owners association and if chargeable against the unit.

R.C. 5311.18(A)(1). "The lien * * * may be foreclosed in the same manner as a mortgage on real property in an action brought on behalf of the unit owners association[.]" R.C. 5311.18(B)(1).

{¶ 20} In this case, appellant does not dispute that it failed to pay common expenses and assessments in accordance with the Declaration and Bylaws. Nor does appellant dispute that Benton Village possessed a valid and enforceable certificate of lien on the property. Nevertheless, appellant reiterates its prior arguments, claiming that the decree of foreclosure must be vacated because (1) Benton Village

failed to satisfy the conditions precedent to foreclosure, (2) Benton Village failed to mitigate its damages, and (3) there remain genuine issues of material fact regarding Benton Village's entitlement to costs and attorney fees. We address each argument separately for the ease of discussion.

## C. Conditions Precedent

{¶ 21} In this case, appellant suggests that, as a condition precedent to foreclosure, Benton Village was required to comply with the express terms of Article XVII, Section B, of the Declaration. This portion of the Declaration governs the association's "remedies for breach of covenants and regulations." Section B of the article, titled "Involuntary Sale," states, in pertinent part:

> If any owner * * * shall violate any of the covenants or restrictions or provisions of the general law, this Declaration or of the Bylaws of the Association * * * and such violation shall continue for thirty (30) days after notice in writing from the Board of Managers * * * then the Board of Managers shall have the power to issue to the defaulting party a 10-day notice in writing to terminate the rights of the said defaulting owner to continue as an owner and to continue to occupy, use, or control his unit. Thereupon, an action in equity may be filed by the Board of Managers against the defaulting owner[.]

{¶ 22} Appellant maintains that Benton Village's complaint "failed to allege, even generally," that it complied with the notice requirements of Section B before filing its complaint for foreclosure. Thus, appellant contends that the trial court failed to fully consider the terms of the Declaration and Bylaws as a whole, and ignored the genuine issues of material fact regarding whether Benton Village satisfied the conditions precedent to foreclosure.

{¶ 23} The Supreme Court of Ohio has defined a "condition precedent" as "one that is to be performed before the agreement becomes effective, and which calls for the happening of some event or the performance of some act after the terms of the contract have been agreed on, before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132 (1917), syllabus. "Whether a provision in a contract constitutes a condition precedent * * * is a question of intent; and the intention will be ascertained by considering the language not only of the particular provision, but of the whole contract and its subject-matter." *Id.*

{¶ 24} On appeal, appellant correctly states that declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation. *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987). "In construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ." *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29; *Assured Administration, L.L.C. v. Young*, 12th Dist. Warren No. CA2019-04-039, 2019-Ohio-3953, ¶ 17.

{¶ 25} A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2010-07-061, 2010-Ohio-5186, ¶ 12. A contract is ambiguous if its

provisions are susceptible of two or more reasonable interpretations. *Covington v. Lucia*, 151 Ohio App.3d 409, 2003-Ohio-346, 784 N.E.2d 186, ¶ 18 (10th Dist.). Whether a contract's terms are clear or ambiguous is a question of law for the court. *Cooper* at ¶ 12.

{¶ 26} Where a contract's terms are clear and unambiguous, its interpretation is as a matter of law, not fact, and may be adjudicated by summary judgment. *Dutch Maid Logistics, Inc. v. Acuity*, 8th Dist. Cuyahoga Nos. 91932 and 92002, 2009-Ohio-1783, ¶ 19. We, therefore, interpret the terms of the association's Declaration and Bylaws de novo. *Continental. W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996); *Georgalis v. Cloak Factory Condominium Unit Owners' Assn.*, 8th Dist. Cuyahoga No. 109300, 2021-Ohio-66, ¶ 13-14.

{¶ 27} After careful review of the Declaration and Bylaws in its entirety, we find no merit to appellant's interpretation of the contract and its assertion that Benton Village failed to comply with a condition precedent to foreclosure. Appellant correctly states that Article XVII, Section B, of the Declaration permits the association to seek equitable relief in the court of common pleas if a unit owner violates any covenant or restriction in the contract and proper notice is provided. In this case, however, Benton Village did not attempt to exercise its equitable rights under Article XVII. The basis of the foreclosure complaint was not premised on a specific violation of the Declaration and Bylaws. Rather, the complaint sought to

foreclose upon a recorded lien as permitted under Article XIII of the Declaration, Article V of the Bylaws, and R.C. 5311.18(B).

{¶ 28} As previously mentioned, Article XIII of the Declaration provides the association a lien for common expenses that have remained unpaid for ten or more days. Relatedly, Article V of the Bylaws sets forth the procedure the association must follow if it wishes to foreclose upon the lien. The provision permits the association to "bring suit for and on behalf of themselves and as representatives of all owners" to foreclose the lien "if owner is in default in the monthly payment of charges or assessments for thirty (30) days."

{¶ 29} Although the lien obtained in this case derived from appellant's failure to pay certain expenses and assessments, the procedures and equitable rights afforded to the association under Article V of the Bylaws are separate and distinct from those outlined in Article XVII of the Declaration. The Declaration and Bylaws provide Benton Village with alternative avenues of relief depending on the circumstances involved, and Benton Village was permitted to exercise its rights to foreclose upon the valid lien. As pertinent here, Article XIII of the Declaration only required the common expenses to remain unpaid for ten days before the association was entitled to a certificate of lien, and Article V of the Bylaws only required the unpaid assessments to remain in default for 30 days before the association was authorized to bring suit on behalf of all unit owners to foreclose on the lien. Here, the record reflects that Benton Village complied with the foregoing requirements.

{¶ 30} Based on the foregoing, we find appellant has not established genuine issues of material fact regarding Benton Village's adherence to the applicable sections of the Declaration and Bylaws prior to initiating foreclosure proceedings. The plain and unambiguous terms of the Declaration and Bylaws did not require Benton Village to comply with the notice requirements contained in Article XVII, Section B, of the Declaration as a condition precedent to a foreclosure action initiated pursuant to R.C. 5311.18(B).

### D. Mitigation of Damages

{¶ 31} Next, appellant argues there remain genuine issues of material fact regarding whether Benton Village made reasonable efforts to mitigate its damages.

{¶ 32} "Under Ohio law, the injured party in a breach-of-contract action has a duty to mitigate damages, meaning that the injured party cannot recover damages 'that it could have prevented by "reasonable affirmative action."'" *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, 67 N.E.3d 140, ¶ 23 (1st Dist.), quoting *Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 159, 638 N.E.2d 91 (1st Dist.1994), quoting *F. Ents., Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 351 N.E.2d 121 (1976), paragraph three of the syllabus. "An injured party need only use 'reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages.'" *Id.*, quoting *Provident Bank v. Barnhart*, 3 Ohio App.3d 316, 320, 445 N.E.2d 746 (1st Dist.1982). The burden of proof for the affirmative defense of failure to mitigate damages lies with the breaching party. *Id.*,

citing *Jindal Builders & Restoration Corp. v. Brown & Cris*, 1st Dist. Hamilton Nos. C-970029 and C-970050, 1997 Ohio App. LEXIS 4768, *1 (Oct. 31, 1997).

{¶ 33} In this case, appellant suggests that it "supported its [affirmative] defense with evidentiary materials, including the Declarations and Bylaws, various communications between the parties, an account statement, and an affidavit." Appellant argues these materials demonstrate that Benton Village failed to mitigate damages by declining appellant's offer in 2021 to pay "all outstanding assessments," minus attorney fees. Appellant contends that Benton Village's "refusal to accept payment" resulted in ballooned damages that could have been avoided. Benton Village counters that (1) it was entitled to recover costs and attorney fees from appellant pursuant to R.C. 5311.18(A)(1)(b), and (2) appellant's argument is barred by Evid.R. 408 "which makes negotiations inadmissible."

{¶ 34} Without addressing the implications of Evid.R. 408, we find the evidentiary materials attached to appellant's filings failed to set forth specific facts showing that there is a genuine issue for trial. As discussed further below, Benton Village was permitted to recover attorney fees and costs pursuant to R.C. 5311.18(A)(1)(b) and analogous provisions contained in the Declaration and Bylaws. Furthermore, we are unpersuaded by appellant's suggestion that Benton Village unreasonably incurred additional damages by declining an "offer to make a substantial payment."

{¶ 35} As previously mentioned, appellant's motion for summary and its brief in opposition incorporated several letters and emails exchanged between

appellant and Benton Village representatives from March 10, 2021, to May 10, 2021. These correspondences reflect appellant's frustration with the association's business practices and its decision to include attorney fees and legal costs in its account summary. Significantly, however, the correspondences do not establish that Benton Village rejected a reasonable settlement offer. Rather, the email referenced by appellant on appeal merely establishes that Bruce-Bey refused to pay the incurred attorney fees and invited Benton Village to initiate legal proceedings if it believed it was entitled to attorney fees. (*See* email correspondence sent by Bruce-Bey, dated May 4, 2021.) ("I still have not received an accurate bill. I have not used the services of [the association's legal representative], nor did I agree to pay anyone's attorney fees. * * * Any attorney fees that we would be subject to would have to be court imposed, so if you are filing a lawsuit against our company you should have your attorney do that properly, and I will communicate with them through the courts. We are not trying to make a big ordeal out of this but we will not just give away $418.00 [in attorney fees].") Bruce-Bey's invitation for future litigation cannot be construed as a good-faith settlement offer that would have prevented future, unnecessary damages.

{¶ 36} Under these circumstances, we find the correspondences attached to appellant's motion for summary judgment did not create a genuine issue of material fact regarding whether Benton Village failed to mitigate its damages by rejecting a good-faith offer to settle the dispute.

## E. Costs and Attorney Fees

{¶ 37} Finally, appellant argues there remain genuine issues of material fact regarding whether the attorney fees sought by Benton Village were authorized, reasonable, and necessary. Appellant contends that the trial court's judgment ignored the evidence "disputing the fee calculation which Benton Village had submitted."

{¶ 38} Appellate courts review a trial court's award of attorney fees for abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157, 160, 648 N.E.2d 488 (1995). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 39} A party moving for attorney fees bears the burden of presenting sufficient evidence of the services performed and the reasonable value thereof. *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855 (10th Dist.). In calculating attorney fees, courts consider numerous factors, including the time and labor involved in litigation, the novelty and difficulty of the legal questions involved, and the results of the legal services. *Id.*, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991).

{¶ 40} In this case, the trial court awarded Benton Village attorney fees and costs pursuant to the express terms of Article V, Section 8, of the Bylaws and the rights afforded to associations under R.C. 5311.18(A)(1)(b), which authorizes the

collection of such fees. Benton Village submitted an affidavit outlining the necessity of the legal work performed and the reasonableness of the hourly rate charged by Attorney Royer. Benton Village further attached an itemized list of accounting as of August 17, 2023, which provided a brief description of the legal services rendered and the amounts charged for each service and filing. Beyond conclusory statements, appellant has presented no evidentiary materials to suggest the award of attorney fees was unreasonable, unnecessary, or unsupported by the evidence. To the extent appellant references the fees charged during the previously dismissed action, Attorney Royer clarified that such fees were not included in Benton Village's calculation of owed fees and costs. (Attorney Royer aff. at ¶ 9, 18.)

{¶ 41} Based on the foregoing, we find the trial court did not err in awarding Benton Village reasonable attorney fees in accordance with the contract and statutory law. *See O'Loughlin v. Ottawa St. Condominium Assn.*, 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327 (finding trial court did not abuse its discretion when it awarded attorney fees incurred in the enforcement of the condominium association's liens against the owners because the attorney fees incurred in pursuance of the lien foreclosure and in defending the condominium owners' attempts to invalidate the liens were inseparable); *Blisswood Village Home Owners Assn. v. Cleveland Community Reinvestment, L.L.C.,* 8th Dist. Cuyahoga No. 105450, 2018-Ohio-2299, ¶ 23 (affirming award of attorney fees as discovery sanction and under R.C. 5311.18(A)(1)(b) where nothing in the record indicated the

award was unreasonable, arbitrary, or unconscionable and the trial court relied on an affidavit attesting to the award's reasonableness).

{¶ 42} The sole assignment of error is overruled.

### III. Conclusion

{¶ 43} The trial court did not err by granting summary judgment in favor of Benton Village while denying appellant's competing motion. Pursuant to Article XIII, Section D, of the Declaration and R.C. 5311.18(A)(1), Benton Village obtained a valid and enforceable lien on the condominium unit. Thereafter, Article V, Section 8, of the Bylaws and R.C. 5311.18(B) permitted Benton Village to "foreclose the lien therefor," and appellant was responsible for the portion of the common expenses chargeable against the unit, plus "the costs of said suit, together with the legal interest and reasonable attorney's fees to be fixed by the court."

{¶ 44} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR