JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Superior Piping Contractors, Inc., appeals the trial court's judgment granting the motion for summary judgment of defendant-appellee, Reilly Industries, Inc. We affirm.
 {¶ 2} In 1988, Superior was incorporated as a surety subcontractor company to perform work on bonded construction projects. Reilly, a manufacturer of coatings, plastic, and adhesives, owned property on Independence Road, upon which it operated its Cleveland division.
 {¶ 3} In 1995, Reilly leased a portion of the Independence Road property to 7-7, Inc., a business which recycled industrial waste. In 1996, Superior entered into a contract with 7-7, in which Superior agreed to provide materials and services for 7-7 on the leased Independence Road property.
 {¶ 4} Exsorbet Industries, Inc. acquired 7-7; 7-7 later became Consolidated Ecosystems, Inc., also known as "ConEco." ConEco agreed to assume all debt owed to Superior. In 1997, Superior demanded payment from ConEco for alleged amounts due and owing on the debt it had assumed. ConEco allegedly failed to pay, and Superior filed suit against 7-7, ConEco, and Reilly in 1997.
 {¶ 5} In January 1998, Reilly filed for summary judgment on the grounds that it had no responsibility for the debt that was assumed by ConEco. In support of its motion for summary judgment, Reilly submitted deposition testimony of Superior's President, Raymond Zetts. Zetts testified that Superior's *Page 2 
services and materials were supplied for the benefit, and under the direction, of 7-7, not for the benefit, or under the direction, of Reilly. Zetts further testified that when Superior's services and materials were provided to 7-7, it was never anticipated that Reilly would be responsible for payment. Zetts also testified about negotiations entered into between Superior and Reilly to settle the lawsuit, but admitted that no final settlement agreement was ever signed by the parties.
 {¶ 6} Superior filed a brief in opposition to Reilly's motion for summary judgment, in which it claimed that the "record evidence supports the conclusion that Superior and Reilly entered into a settlement agreement pursuant to which Superior could, at its own cost, remove certain improvements it had worked on at Reilly's property (the `Improvements')." In particular, Superior argued that the "actual execution of [the] settlement document was not a condition to the Settlement Agreement's existence," and it would have signed the document, but "it became unclear" as to who (Superior or Reilly) was entitled to which improvements.
 {¶ 7} Zetts and Superior's counsel averred in affidavits that a settlement between the parties was reached in May 1998. Superior also submitted Reilly's answers to Superior's interrogatories, which it claimed supported its contention *Page 3 
that the lawsuit had been settled and that Reilly removed certain improvements in contravention of the settlement agreement.
 {¶ 8} The record reveals that as part of the parties' settlement negotiations, Superior's counsel sent a letter to Reilly s counsel, which read in relevant part: "[t]his letter shall serve to confirm that we have agreed to settle *** subject to a mutual agreement on the settlement documents." Numerous drafts of a settlement agreement were exchanged between the parties, but a final agreement was never executed.
 {¶ 9} Although no final agreement had been executed, Superior notified the court of the pending settlement, and on March 30, 1998, the court dismissed the case with prejudice. In 2002, Superior filed another lawsuit against Reilly for (1) breach of contract; (2) fraudulent inducement; (3) unjust enrichment; (4) replevin; and (5) conversion. The trial court dismissed the case with prejudice, holding that Superior lacked standing to sue. This court upheld the dismissal. Superior PipingContractors, Inc. v. Reilly Industries, Inc., Cuyahoga App. No. 82567,2003-Ohio-6347.
 {¶ 10} In 2004, Superior filed this action, alleging that the March 1998 dismissal was made pursuant to a settlement agreement between it and Reilly. The complaint alleged the following claims against Reilly: (1) breach of settlement agreement; (2) fraudulent inducement; (3) unjust enrichment; (4) *Page 4 
conversion; (5) replevin; and (6) enforcement of a mechanic's lien.[1]
The trial court granted Reilly's motion for summary judgment under the doctrine of res judicata. This court reversed, [2] and on remand, the trial court considered the substantive issues and granted Reilly's motion. In its five assignments of error, Superior contends that the trial court erred in granting summary judgment on each of its claims.
SUMMARY JUDGMENT STANDARD
 {¶ 11} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267. This court reviews the lower court's granting of *Page 5 
summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 12} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "*** the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ. R. 56(C) showing that a genuine issue for trial exists. Id.
BREACH OF SETTLEMENT AGREEMENT
 {¶ 13} In its first assignment of error, Superior contends that the trial court erred in granting summary judgment on its claim of breach of the settlement agreement.
 {¶ 14} "[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation" which may be enforced through a separate action for breach of contract. Catanzaro Sons Daughters,Inc. v. *Page 6 Trio Food Distributors, Inc. (Apr. 27, 2001), Hamilton App. No. C-000584, at 6. See, also, In re All Kelley Ferraro AsbestosCases, 104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 28, 821 N.E.2d 159;Davis v. Jackson, 159 Ohio App.3d 346, 2004-Ohio-6735, at ¶ 14,823 N.E.2d 941. Accordingly, the law of contracts applies, and a plaintiff asserting breach of a settlement agreement must establish all of the elements of a breach of contract. See Rondy, Inc. v. Goodyear TireRubber Co., Summit App. No. 21608, 2004-Ohio-835, at ¶ 7.
 {¶ 15} In order to establish a claim for breach of contract, a plaintiff must demonstrate the existence of an agreement; that the nonbreaching party fulfilled its obligations under the agreement; breach without legal justification; and damages to the nonbreaching party.Lawrence v. Lorain Cty. Community College (1998), 127 Ohio App.3d 546,549, 713 N.E.2d 478.
 {¶ 16} There is no written contract in this case. Although the parties engaged in settlement negotiations and several drafts of a proposed agreement were generated, a final agreement was never executed by the parties. Superior argues, however, that the parties reached an oral argeement, which Reilly breached.
 {¶ 17} A review of the record belies Superior's contention. The record instead demonstrates that because the parties could not agree on the terms of a settlement, the proposed settlement agreement and documents were never *Page 7 
executed. For example, by Zetts' own admission, an essential detail of the settlement (i.e., who would get what improvements) "became unclear" and the final agreement was therefore never signed. In short, there was no "meeting of the minds" between the parties. Thus, Superior's argument that the parties orally agreed to the terms of a settlement fails.
 {¶ 18} We are also not persuaded by Superior's argument that Reilly's discovery responses demonstrated that a settlement agreement was reached. Superior's interrogatories asked for responses identifying persons "involved in discussions, negotiations or communications relating to settlement of the Lawsuit." Similarly, its requests for documents sought documentation including "[a]ll notes, memoranda, correspondence, agreements, draft agreements and other documents relating to settlement of the Lawsuit or settlement discussions, negotiations or communications with respect to the Lawsuit[.]" The interrogatories and request for production of documents do not demonstrate that a settlement occurred; rather, they only suggest that settlement negotiations occurred. Similarly, there is nothing in Reilly's responses that would indicate that a settlement occurred.
 {¶ 19} Finally, at oral argument, Superior's attorney argued that after the court dismissed the case the parties began to memorialize their agreement into a mutually agreeable document. Accordingly, Superior's counsel received a draft *Page 8 
agreement from Reilly's counsel, made revisions, and returned the document to Superior's counsel. On May 7, 1998, Reilly's attorney sent a revised settlement agreement, incorporating most of Superior's revisions. According to Superior's attorney, the May 7 document was satisfactory to Superior and, therefore, Superior's counsel did not forward any further requested revisions to Reilly's counsel. Counsel argued that the agreement became final at that time. We are not persuaded. The agreement was never signed, and the evidence indicates that it was not signed because the parties could not completely agree.
 {¶ 20} In light of the above, the parties did not have an agreement, written or oral, on the terms of a settlement, and the trial court properly granted Reilly's motion for summary judgment on Superior's breach of the settlement agreement claim.
 {¶ 21} The first assignment of error is overruled.
FRAUDULENT INDUCEMENT
 {¶ 22} For its second assigned error, Superior contends that the trial court erred in granting summary judgment on its fraudulent inducement claim.
 {¶ 23} A prima facie case for fraudulent inducement must contain the following evidence: (1) a representation material to the transaction; (2) made falsely, with knowledge of its falsity, or with utter disregard and recklessness regarding its truth or falsity; (3) with the intent to mislead another into reliance; *Page 9 
(4) justifiable reliance on the representation or concealment; (5) and injury proximately resulting from such reliance. Burr v. Stark Cty. Bd.of Commrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 24} Superior claims that Reilly made false representations because it acted in contravention of "the May 7, 1998 mutually-accepted settlement document." As already discussed, there was no settlement agreement between the parties. Although the parties engaged in settlement negotiations, they never had a "meeting of the minds" and, therefore, no agreement was ever reached. For this reason, the trial court properly granted summary judgment in favor of Reilly on Superior's fraudulent inducement claim.
 {¶ 25} The second assignment of error is overruled.
UNJUST ENRICHMENT
 {¶ 26} For its third assigned error, Superior claims that the trial court erred in granting summary judgment in favor of Reilly on its claim for unjust enrichment.
 {¶ 27} Unjust enrichment is based on the principle that a person should not be allowed to profit or enrich himself inequitably at another's expense, and should be required to make restitution to the party suffering the loss. Henkle v. Henkle (1991), 75 Ohio App.3d 732,738, 600 N.E.2d 791. *Page 10 
 {¶ 28} "To support a claim of unjust enrichment, a plaintiff must demonstrate that (1) he conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff. Hambleton v. R.G. Barry Corp.
(1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298. The plaintiff must confer the benefit as a response to fraud, misrepresentation, or bad faith on behalf of the defendant. Natl. City Bank v. Fleming (1981),2 Ohio App.3d 50, 58, 440 N.E.2d 590. That is, there must be a tie of causation between the plaintiffs loss and the defendant's benefit.Elbert v. West (Aug. 20, 1986), Lorain App. No. 3985, at 5, 1986 Ohio App. LEXIS 7989, 1986 WL 9131." Laurent v. Flood Data Serv., Inc.,146 Ohio App.3d 392, 399, 2001-Ohio-1660, 766 N.E.2d 221.
 {¶ 29} In this assignment of error, Superior claims that it was entitled to damages from Reilly for the costs of improvements it made to the Independence Road property. The evidence in the record however demonstrates that the improvements were subject to Superior's contractual agreement with 7-7, not Reilly. Thus, there is no evidence that Superior conferred a benefit upon Reilly, with Reilly's knowledge, or under circumstances that could be deemed unjust or inequitable to permit Reilly to retain the benefit without compensating Superior.
 {¶ 30} Moreover, although the parties apparently were negotiating about what improvements to the property each would be entitled to, as already *Page 11 
discussed, the negotiations never materialized into a final settlement agreement. Thus, Superior cannot prevail on an unjust enrichment claim pursuant to the alleged settlement.
 {¶ 31} In light of the above, the trial court properly granted summary judgment in favor of Reilly on Superior's unjust enrichment claim. The third assignment of error is overruled.
CONVERSION
 {¶ 32} In its fourth assignment of error, Superior claims that the trial court erred in granting summary in favor of Reilly on its conversion claim.
 {¶ 33} Conversion is recognized "as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights." Ohio Tel.Equip. Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, 93,493 N.E.2d 289, citing RR. Co. v. O'Donnell (1892), 49 Ohio St. 489, 32 N.E. 476; Fulks v. Fulks (1953), 95 Ohio App. 515, 121 N.E.2d 180.
 {¶ 34} In support of its claim for conversion claim, Superior argues that "[u]nder the Settlement Agreement, Superior was given an ownership interest and legal right to the Improvements." Having found that no settlement agreement was reached in this case, Superior's claim necessarily fails.
 {¶ 35} The fourth assignment of error is overruled. *Page 12 
REPLEVIN
 {¶ 36} Finally, Superior challenges the trial court's judgment granting summary judgment in favor of Reilly on the replevin claim.
 {¶ 37} "A Replevin action is a possessory action by which the owner or one who has a general or special interest in the personal property and the right to immediate possession seeks to recover the possession of the property. The right of possession of the property because of title or interest in it is an essential element in a Replevin action." J JTruck and Trailer Repair, Inc. v. Cyphers (Dec. 12, 1980), Montgomery App. No. 6625, at 3, citing R.C. 2737.01 et seq.
 {¶ 38} Superior argues the following in regard to its replevin claim:
 {¶ 39} "Reasonable jurors could conclude that Superior was entitled to possess the Improvements and that Reilly knew of Superior's possessory interest in the Improvements. Further, Superior has raised genuine issues of fact regarding its making of demand for possession of the Improvements upon Reilly and Reilly's refusal of this demand. (Zetts dep., pp. 38-39.) Finally, Reilly's own discovery responses in this case show that Reilly removed and relocated at least some of the Improvements for its own use at its own facilities."
 {¶ 40} Superior's argument about the possible conclusion of reasonable jurors is apparently based on the purported settlement. There is no settlement *Page 13 
agreement, however, in this case, and reliance on the proposed settlement agreement in support of its claims is misplaced.
 {¶ 41} Further, Zetts' deposition testimony regarding Superior's alleged demand upon Reilly for possession of the improvements was based upon terms set forth in the proposed settlement agreement. Moreover, Reilly's discovery responses did not create genuine issues of material fact. Specially, Reilly responded, in relevant part, as follows in discovery on this issue: (1) response to interrogatory no. four: "the alleged Improvements were not sold[;]" (2) response to interrogatory nos. five and six: "Reilly did not retain any of the alleged Improvements[;]" (3) response to interrogatory no. seven and document request no. four: "Reilly did not sell any of the alleged Improvements [;]" and (4) response to interrogatory no. eight: "Reilly states that it did not work in, with, or otherwise utilize the alleged Improvements."
 {¶ 42} In light of the above, Superior failed to demonstrate that a genuine issue of material fact existed regarding its replevin claim, and the trial court properly granted summary judgment in favor of Reilly on the claim.
 {¶ 43} The fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 14 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and PATRICIA A. BLACKMON, J., CONCUR
[1] Superior voluntarily dismissed its request for relief under mechanic's lien.
[2] Superior Piping Contractors, Inc. v. Reilly Industries, Inc., Cuyahoga App. No. 84871, 2005-Ohio-1318. *Page 1