[Cite as *Griffith v. Chelsea Condominimum*, 2026-Ohio-928.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CHARLES GRIFFITH, ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 115032 |
| v. | : | |
| THE CHELSEA CONDOMINIUM ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** March 19, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-856562

*Appearances:*

Kehoe and Associates, LLC, Robert D. Kehoe, and Kevin
P. Shannon, *for appellants.*

Collins, Roche, Utley & Garner, LLC, Kurt Anderson, and
Megan D. Stricker, *for appellee.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Plaintiffs-appellants Charles Griffith and John Griffith as powers of attorney for Robert Griffith, Amelia Joynes, Charles Niles, Sheila Niles, Mindy

Silverstein *nee* Spero, William Steinbrink, Anne Tavill, and The Ruska Wasserstein Trust (collectively, the "Owners") appeal the decision granting defendant-appellee the Chelsea Condominium Association's (the "Association") motion to enforce settlement agreement and imposition of attorney's fees.[1] For the reasons that follow, we affirm the decision in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Factual and Procedural History

{¶ 2} In December 2015, the Owners filed a verified class action and derivative complaint against the Association, the Chelsea Condominium's Board (the "Board"), TransCon Builders, Inc. ("TransCon"), Owner's Management Company ("OM"), Peter Rzepka ("Peter"), and Fred Rzepka ("Fred") (collectively, the "Defendants"). The Owners, a group of current and former owners of units in the Association, requested, as a class, declaratory judgment regarding the makeup of the Board, and the Owners also raised claims for breach of fiduciary duty, breach of contract, and negligence. The trial court ultimately denied the Owners' request for class certification. In addition, the Owners asserted derivative claims on behalf of the Association against TransCon for negligent construction and against OM for gross negligence and breach of contract.

{¶ 3} During the course of litigation, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, and Nationwide Property

---

[1] One of the original plaintiffs, Dr. Anthony Tavill, passed away during the pendency of the litigation.

& Casualty Insurance Company (collectively, "Nationwide") moved to intervene in the litigation for the purposes of filing a declaratory judgment action to determine whether they had a duty to insure the Association, the Board, Transcon, OM, Peter, and Fred. The trial court granted the motion.

{¶ 4} The parties vigorously litigated the case and resolved the dispute under two settlement agreements. The first agreement, the Confidential Mutual Release and Settlement Agreement (the "CMRSA"), addressed the claims between the Owners, Nationwide, and the Defendants. The CMRSA was not entered into the record. The second agreement, the derivative settlement agreement (the "DSA"), resolved the Owners' derivative claims on behalf of the Association.

{¶ 5} In September 2020, the Owners filed a joint motion to approve the DSA. The DSA amended the original complaint and added Peter and Fred as derivative defendants along with TransCon and OM (collectively, the "Derivative Defendants"). The DSA required a $300,000 payment from the Derivative Defendants to the Association to resolve all derivative claims. A complete copy of the DSA was attached to the motion.

{¶ 6} In November 2020, the court approved the DSA. In its order, the trial court retained jurisdiction over the implementation, administration, and enforcement of the DSA. The trial court then dismissed the derivative claims, with prejudice, noting that "[t]he Derivative Claims are dismissed as against all [Derivative Defendants] on the merits and with prejudice, with no fees or costs

assessed against any party except as expressly provided in the [DSA] and this Judgment."

{¶ 7} In December 2021, the trial court filed a journal entry dismissing the remainder of the case with prejudice based on the parties' representation that all claims, counterclaims, crossclaims, and intervening claims were settled. The trial court did not retain jurisdiction over the CMRSA.

{¶ 8} In February 2021, the Association filed a motion to enforce the DSA and a motion to show cause. The Association alleged that the Owners violated the terms of the DSA when they only distributed a partial payment of $290,144.66 and the Owners' attorneys retained $9,855.34 for various expenses. The Association further alleged that the Owners' attorney initially sent the partial payment with an explanation that certain funds had been withheld to cover expenses. The letter also noted that if the Association accepted the check, they agreed that the Owners' attorneys properly withheld the funds. The Association returned the check and filed the motion to enforce the DSA. The Association also requested that the trial court order the payment of attorney's fees, interest, and sanctions.

{¶ 9} The Owners filed a motion for leave to file a reply brief in opposition under seal and include the CMRSA. The Owners argued that it would be necessary to disclose information from the CMRSA, which included a confidentiality clause. Nationwide and the Association both filed briefs in opposition to the Owners' motion to file under seal. After additional briefing, the trial court denied the Owners' motion. While the trial court ruled that the CMRSA could not be filed under

seal, it authorized the parties to stipulate to the disclosure of any provisions relevant to the Association's motion to enforce the DSA. In the interim and at the suggestion of the court, the Owners distributed the undisputed settlement funds to the Association.

{¶ 10} The Owners appealed the decision denying their request to submit their brief under seal. The trial court stayed the case pending appeal. The appeal was dismissed for lack of a final appealable order. *Griffith v. Chelsea Condominium,* No. 108988 (8th Dist. Oct. 23, 2019). The Owners appealed that dismissal to the Ohio Supreme Court, which declined jurisdiction. *02/18/2020 Case Announcements,* 2020-Ohio-518, *Griffith v. Chelsea Condominium,* No. 2019-1693 (appeals not accepted for review). The trial court reactivated the case in September 2022.

{¶ 11} The Owners subsequently filed a brief in opposition to the Association's motion to enforce the DSA. They also filed a cross-motion to enforce the DSA, arguing that most of the Association's arguments were moot because the Owners had distributed the undisputed portion of the settlement fund to the Association. The Owners asserted that the Association received a substantial benefit from the derivative claims litigation and should bear some of the costs. The Owners noted that "(1) the retention agreement between counsel and [Owners], made on behalf of the Association, requires payment of expenses, (2) industry practice and the Rules of Professional Conduct require the clients to pay expenses of litigation and (3) it would be inequitable for the Association to take the benefit of the

settlement fund without paying the burden of litigation expenses." The Owners did not raise claims from the CMRSA because the parties were unable to agree to any stipulations.

{¶ 12} In January 2023, the trial court scheduled a hearing on the Association's motion to enforce the DSA and the responsive briefs. After listening to the arguments of counsel, the trial court took the issue under advisement. The Owners asked to proffer exhibits, which the trial court allowed.

{¶ 13} The trial court issued a judgment entry (the "May 2, 2023 order") finding that the DSA unambiguously promised and entitled the Association to the full $300,000 payment. The court further found that the Owners' attorney never raised a claim for litigation expenses at the time of the DSA and court order and, therefore, any such claims were waived. The trial court ordered the Owners' attorney to deliver the remaining balance of the settlement fund to the Association. The trial court did not address the Association's request for attorney's fees, interest, or sanctions in its order.

{¶ 14} The Owners appealed the May 2, 2023 order. The Association filed a motion to dismiss the appeal arguing that the May 2, 2023 order was not a final appealable order. In the meantime, the Association filed a motion for clarification and reconsideration, or relief from judgment in the trial court. The Association argued that they were entitled to prejudgment interest under R.C. 1343.03, and that they were entitled to attorney's fees as actual damages for successfully litigating the motion to enforce the DSA. Simultaneously, the Association filed a motion in this

court requesting a remand to the trial court for consideration of its motion, which was denied as moot after this court granted the Association's motion to dismiss the appeal because the trial court's May 2, 2023 order was not final and appealable. *Griffith v. The Chelsea Condominium*, No. 112703 (8th Dist. June 12, 2023) (motion Nos. 564312 and 564689).

{¶ 15} Subsequently, the trial court issued an order granting the Association's request for prejudgment interest and explicitly denying their request for attorney's fees and sanctions ("June 29, 2023 order"). The order did not include a calculation of prejudgment interest but noted that the amount would be determined upon confirmation of the payment date.

{¶ 16} The Association filed a motion for reconsideration, an amended motion for reconsideration, and an alternative motion for relief from judgment. The Owners filed a brief in opposition to the motion for reconsideration. Subsequently, the Association filed an appeal to the June 29, 2023 order, and the Owners filed a cross-appeal. The Association filed a motion asking this court to remand the case to the trial court to allow it to consider its amended motion for reconsideration. This court granted the motion for remand, advising the parties that if the trial court resolved the issue they were to move to dismiss the appeal.

{¶ 17} After the matter was remanded, the Owners filed a brief in opposition to the Association's amended motion and a hearing was held.

{¶ 18} After listening to arguments of counsel at the hearing, the trial court granted the Association's amended motion for reconsideration (the "October 26,

2023 order"). The trial court found that the June 29, 2023 order was not a final order under R.C. 2505.02(B)(4), and that it, therefore, could be reconsidered. The court then amended the June 29, 2023 order only as to its ruling on attorney's fees. The court found that the Owners acted contrary to the DSA and the original judgment that ordered the Owners to distribute $9,855.34 to the Association. As a result, the Association was entitled to reasonable attorney's fees to be determined after a hearing on the issue. Thereafter, following the trial court's instructions when granting the earlier motion to remand, the appellants moved to voluntarily dismiss, which this court granted. *Griffith v. Chelsea Condominium,* No. 113031 (8th Dist. Oct. 27, 2023) (motion Nos. 568980 and 568983).

{¶ 19} As is relevant to the present appeal, in March 2025, the trial court issued a journal entry awarding the Association $40,338.95 in attorney's fees; the $9,855 outstanding settlement balance rounded to the nearest dollar; prejudgment interest on the $300,000 from February 2, 2021, through March 25, 2021, and on the $9,855 from March 26, 2021, through June 26, 2024; and statutory post-judgment interest (the "March 19, 2025 order").

{¶ 20} The Owners appeal the trial court's ruling on the motion to file documents under seal and the May 2, 2023, June 29, 2023, October 26, 2023, and March 19, 2025 orders, raising the following assignments of error for our review.

**Assignment of Error No. 1**

The trial court erred by failing to accept the global settlement agreement under seal.

**Assignment of Error No. 2**

The trial court erred by finding that the Association should not be required to pay its *pro rata* share of litigation expenses.

**Assignment of Error No. 3**

The trial court erred by finding that [the Owners] had breached the settlement agreement and awarding fees to the Association.

**Assignment of Error No. 4**

The trial court erred in its calculation of attorney's fees.

**Assignment of Error No. 5**

The trial court erred by denying [the Owners'] cross-motion to enforce the settlement agreement.

**Law and Analysis**

{¶ 21} For ease of analysis, we will address the Owners' assignments of error out of order and in combination when necessary.

**I.  Ruling on the Motions to Enforce Settlement Agreement**

{¶ 22} We begin with the Owners' first, second, and fifth assignments of error, which all challenge the trial court's decision to grant the Association's motion to enforce the settlement agreement.  In the first and second assignments of error, the Owners argue that the trial court erred when it failed to consider the CMRSA under seal, the Owners' fee agreement with their counsel, common practice for contingency fee agreements, the Rules of Professional Conduct, the common fund doctrine, and equitable principles.  For the same reasons, the Owners argue that the trial court erred when it denied their cross-motion to enforce the settlement

agreement in the fifth assignment of error. The Owners' arguments are not well taken.

## A. **Standard of Review**

{¶ 23} The standard of review for a decision on a motion to enforce a settlement agreement depends on the issue presented. "'If the question is an evidentiary one, this court will not overturn the trial court's findings if there was sufficient evidence to support the finding.'" *Kingsbury v. Cornerstone Family Office L.L.C.*, 2022-Ohio-18, ¶ 18 (8th Dist.), quoting *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, ¶ 15 (8th Dist.), citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679 (7th Dist. 2000). "If the issue is a question of contract law, the reviewing court must determine whether the trial court's order is based on an erroneous standard or a misconstruction of law." *Al-Zubi v. Cosmetic & Implant Dental Ctr. of Cincinnati, Inc.*, 2020-Ohio-3272, ¶ 7 (1st Dist.), citing *Turoczy* at *id.*; *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St. 3d 501, 502 (1996). In other words, the issue is "whether the trial court erred as a matter of law in sustaining the motion to enforce the settlement agreement." *Chirchiglia* at *id.*, citing *Continental* at *id.*

{¶ 24} The facts in this case are undisputed. The Owners withheld $9,855.34 from the agreed settlement amount ostensibly to cover the Association's purported share of litigation expenses. Therefore, the question for this court is whether the trial court erred as a matter of law when it found that the Owners violated the DSA

and granted the Association's motion to enforce the settlement agreement. This question requires a review of settlement-agreement law.

## B. Settlement Agreements

{¶ 25} Preliminarily, a settlement agreement is a contract "designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party." *Continental* at 502, citing *Spercel v. Sterling Industries*, 31 Ohio St. 2d 36, 38 (1972). Settlement agreements "are highly favored in the law." *Id.*, citing *State ex rel. Wright v. Weyandt*, 50 Ohio St.2d 194 (1977); *Spercel* at *id*. Accordingly, contract law applies when examining the terms of a settlement agreement. Issues regarding the construction of written contracts are reviewed de novo, with the "purpose . . . to realize and give effect to the intent of the parties." *J. Griffin Ricker Assocs., LLC v. Well*, 2022-Ohio-1470, ¶ 21, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus, and *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus.

{¶ 26} Where the terms of a contract are unambiguous, the court determines the intent of the parties from the contract itself. *F & L Ctr. Co. v. H. Goodman, Inc.*, 2004-Ohio-5856, ¶ 6 (8th Dist.), citing *Mattlin-Tiano v. Tiano*, 2001 Ohio App. LEXIS 32, *5 (10th Dist. Jan. 9, 2001); *Starr v. Ohio Dept. of Commerce Div. of Real Estate & Professional Licensing*, 2021-Ohio-2243, ¶ 42; *Antonucci v. Ohio Dept. of Taxation*, 2010-Ohio-3326, ¶ 8 (10th Dist.) ("Indeed, when contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding

an intent which is not expressed in the clear language utilized by parties."). "Extrinsic evidence may be considered only when the language of the contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning." *F & L* at ¶ 6, citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635 (1992).

{¶ 27} Turning to the first assignment of error, the Owners argue that the trial court erred when it refused to allow them to submit the CMRSA under seal because a review of the CMRSA was a "necessary inquiry in determining if the [DSA had] been breached." The Owners do not argue that the DSA was unclear or ambiguous. Rather, they argue that the circumstances surrounding the agreement required the trial court to look at extrinsic evidence to determine whether they violated the DSA.

{¶ 28} Our first consideration is whether the DSA is ambiguous. If the DSA is unambiguous, we may not consider extrinsic evidence to create an ambiguity that does not appear on the face of the document. *Shifrin* at 638.

{¶ 29} A review of the DSA establishes that the terms regarding the amount of the payment to the Association are unambiguous. At Section II(F), the DSA provides that the Association and its counsel "believe the $300,000 payment to the Association is sufficient consideration for the settlement and discharge of the Derivative Claims." Section IV(B) indicates that the Derivative Defendants would pay $300,000 to the Owners, who were charged with distributing the funds to the Association.

{¶ 30} The Owners argue that the word "distribution" implies that they were entitled to deduct expenses; however, the plain language of the contract does not support this interpretation:

> Payment of the Settlement Amount. Pursuant to the terms of the proposed Settlement, no later than ten (10) days after the Settlement's Effective Date, Derivative Defendants agree to cause to be paid $300,000 to the [Owners] for subsequent distribution to the [Association] to settle the derivative claims.

{¶ 31} To find that this language entitles the Owners to deduct their expenses, this court would have to add language to the DSA. The DSA simply and unambiguously calls for the Derivative Defendants to present $300,000 to the Owners, after which the Owners were to distribute the $300,000 to the Association.

{¶ 32} Furthermore, the DSA contains a release, which states that on the effective date of the settlement, all parties release any claims for "recovery for liabilities, damages, losses, attorney's fees, costs or expenses" based on the derivative claims.

{¶ 33} Because we find the settlement language to be unambiguous, the trial court did not err when it denied the Owners' motion to submit the CMRSA under seal. The trial court was not permitted to go beyond the DSA to understand its terms; thus, the first assignment of error is overruled.

{¶ 34} For the same reasons, the Owners' second and fifth assignments of error must be overruled. The Owners argue that the trial court should have considered that (1) their counsel was effectively the Association's attorney for the derivative claims and that his fee agreement with them should apply to the

Association allowing the deduction of litigation expenses from the settlement fund; (2) it is common practice under contingency fee agreements for the attorney to deduct litigation expenses from the settlement funds; (3) such a deduction was proper because the Rules of Professional Conduct prevent the Owners' counsel from paying the expenses himself; and (4) both the common fund doctrine and equitable principles require the Association to pay its share of litigation expenses. Further, they argue that for these same reasons, the trial court erred when it failed to grant their cross-motion to enforce the settlement agreement.

{¶ 35} Each of these challenges requires the court to consider factors outside of the DSA. Beginning with the Owners' contract with their attorney, we cannot find that the trial court erred when it did not consider the fee agreement. Assuming for the sake of argument that the contract between the Owners and their attorney applied to the Association, the trial court was not permitted to consider that separate contract to understand the terms of the DSA where its terms were unambiguous.

{¶ 36} In *Ward v. Eaton US Holdings*, 2017-Ohio-543 (8th Dist.), the plaintiff agreed in a separate matter to reimburse his employer the sum of $5,000. When he suffered an injury on the job, the plaintiff and the employer agreed to a settlement of $20,000. However, instead of remitting $20,000, the employer remitted $15,000, deducting the $5,000 owed from the total. The plaintiff filed a motion to enforce the settlement agreement, but the trial court denied the motion. On appeal, this court overturned the trial court's decision finding that where the settlement agreement was clear and unambiguous and did not provide for the

deduction of any funds from the settlement amount, the plaintiff was entitled to the full amount. *Id*. at ¶ 14.

{¶ 37} The Owners' remaining arguments suggest that common legal practices, rules of conduct, and law and equity should require the Association to pay its portion of litigation expenses. We recognize that generally a derivative plaintiff may recover attorney's fees. *Nordquist v. Schwartz*, 2012-Ohio-4571, ¶ 21 (7th Dist.), citing *Apicella v. PAF Corp.*, 17 Ohio App.3d 245, 250 (8th Dist. 1984). However, a party to a contract may choose to forego certain benefits to avoid the risk of trial. "A settlement agreement does not have to be fair and equitable to be binding and enforceable, so long as it is not procured by fraud, duress, overreaching or undue influence." *Alotech Ltd. L.L.C. v. Barnes*, 2017-Ohio-5569, ¶ 12 (8th Dist.), citing *Vasilakis v. Vasilakis*, 1996 Ohio App. LEXIS 2569, *5-6 (8th Dist. June 20, 1996). The Owners have not argued that they were improperly induced into entering the DSA; therefore, we give effect to the intent of the parties as established by the contract. In this case that includes the Owners' choice to forego reimbursement of their litigation expenses.

{¶ 38} Accordingly, the second and fifth assignments of error are overruled.

## II.    Reconsideration of the June 29, 2023 Order

{¶ 39} In the third assignment of error, the Owners argue that the trial court erred when it reconsidered its June 29, 2023 order, found that the Owners breached the DSA, and ordered them to pay the Association's attorney's fees. Specifically, the Owners argue that the trial court's June 29, 2023 order was a final order that could

not be reconsidered.  According to the Owners, even if it could be reconsidered, they did not breach the DSA; they merely deducted expenses that the Association was purportedly required to pay.  Further, they challenge the trial court's remedy, arguing that attorney's fees were discretionary, not mandatory.  Therefore, it was unnecessary for the trial court to reconsider its June 29, 2023 order to impose attorney's fees.

## A. Reconsideration of Final Orders

{¶ 40} The Owners argue that the June 29, 2023 order was a final order because it disposed of all pending issues, except the calculation of prejudgment interest.  Citing this court's decision in *Zappola v. Rock Capital Sound Corp.*, 2014-Ohio-2261, ¶ 26 (8th Dist.), the Owners argue that the calculation of prejudgment interest is a ministerial task that does not prevent a judgment from being a final order.  Therefore, the trial court erred when it reconsidered that order.  The Owners' arguments lack merit.

{¶ 41} """A final order . . . is one disposing of the whole case or some separate and distinct branch thereof."""  *Zunshine v. Cott*, 2007-Ohio-1475, ¶ 20 (10th Dist.), citing *Noble v. Colwell*, 44 Ohio St.3d 92, 94 (1989), quoting *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 306 (1971).  Where a judgment is not final or appealable, the trial court is permitted to reconsider it at any time prior to entry of its final judgment.  *Id.* at ¶ 23.  A trial court's decision that occurs before the "'judgment adjudicating all the claims and the rights and liabilities of all the parties'"

is subject to reconsideration. *Assunta Rossi Personalty Revocable Living v. Keehan*, 2023-Ohio-3710, ¶ 11 (8th Dist.), quoting Civ.R. 54(B).

{¶ 42} With respect to prejudgment interest, this court has noted that "[a] judgment that leaves issues unresolved and contemplates further action is not a final, appealable order under R.C. 2505.02(B)(1) unless the remaining issue is mechanical and involved only a ministerial task." *Third Wing, Inc. v. Columbia Cas. Co.*, 2011-Ohio-4827, ¶ 6 (8th Dist.), citing *State v. Threatt*, 2006-Ohio-905, ¶ 20. The Ohio Supreme Court has noted:

> Prejudgment interest is neither damages nor an easily computed cost. Determining whether to grant prejudgment interest is not a merely ministerial task; it requires the trial court to find that "the party required to pay the judgment failed to make a good faith effort to settle" and that "the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case." *Moskovitz v. Mt. Sinai Med. Ctr.* [69 Ohio St.3d 638, 658 (1994)]. See R.C. 1343.03(C). Determining whether prejudgment interest should be awarded requires judicial fact-finding and the exercise of judicial discretion. We conclude that, as between damages and costs, prejudgment interest is more in the nature of damages.

*Miller v. First Internatl. Fid. & Trust Bldg.*, 2007-Ohio-2457, ¶ 7.

{¶ 43} In summary, a judgment that does not completely address damages is final and appealable "'where the computation of damages is mechanical and unlikely to produce a second appeal because only a ministerial task similar to assessing costs remains.'" *Lucio v. Safe Auto Ins. Co.*, 2010-Ohio-2528, ¶ 23 (7th Dist.).

{¶ 44} In the instant case, the trial court granted the motion to enforce the DSA in the May 2, 2023 order but did not address the request for prejudgment

interest, attorney's fees, or sanctions. This court dismissed the subsequent appeal finding that the May 2, 2023 order was not a final, appealable order because of those outstanding issues. *Griffith v. Chelsea Condominium Assn.*, No. 112703 (8th Dist. June 12, 2023). The June 29, 2023 order followed, which denied the Association's request for attorney's fees and sanctions and found that the Association was "entitled to prejudgment interest as a matter of law which shall be calculated upon confirmation of the date of payment."

{¶ 45} Two factors in this case signal that the calculation of prejudgment interest was not merely ministerial. First, the court's order depended on the Owners remitting the disputed funds to the Association. Until the date of remittal was known, the calculation could not be completed. Additionally, both parties had vigorously litigated the case, filing two appeals prior to the settlement agreement, and three after the Association filed its motion to enforce. Given the foregoing, there was sufficient evidence in the record to find that the calculation of prejudgment interest was not merely ministerial, and given the history, there was no certainty that calculation of prejudgment interest would prevent further appeals. *Lucio* at ¶ 23 ("[I]f only a ministerial task similar to executing a judgment or assessing costs remains and there is a low possibility of disputes concerning . . . individual claims, the order can be appealed without waiting for performance of that ministerial task."). For those reasons, we find that the June 29, 2023 order was not a final order, and the trial court was permitted to reconsider it.

**B. Breach of the Settlement Agreement**

{¶ 46} Next the Owners argue that the trial court erred in finding that they breached the DSA. They argue that they merely withheld funds the Association was required to pay. Further, they argue that the imposition of attorney's fees is discretionary, not mandatory.

{¶ 47} As we have already noted, a settlement agreement is a contract and contract law applies to its evaluation. To succeed on a breach-of-contract claim, a party must establish (1) the existence of a contract, (2) a breach of that contract, and (3) they suffered damages resulting from that breach. *R. Gibson Properties, L.L.C. v. Genmoncha, L.L.C.,* 2021-Ohio-3732, ¶ 23 (8th Dist.), citing *Superior Piping Contrs., Inc. v. Reilly Industries, Inc.*, 2008-Ohio-4858, ¶ 15, (8th Dist.), citing *Lawrence v. Lorain Cty. Community College*, 127 Ohio App.3d 546, 549 (9th Dist. 1998). When the issue is a breach of settlement, courts have found that the failure to perform an aspect of the settlement that necessitates the other party starting litigation establishes the breach. *Tejada-Hercules v. State Auto. Ins. Co.*, 2008-Ohio-5066, ¶ 21 (10th Dist.). "The rationale behind the exception for allowing attorney's fees expended as a result of enforcing a settlement agreement is that 'any fees incurred after the breach of the settlement agreement were relevant to the determination of compensatory damages, including those fees [a party was] "forced" to incur by filing the action.'" *Brown v. Spitzer Chevrolet Co.*, 2012-Ohio-5623, ¶ 20 (5th Dist.), quoting *Tejada-Hercules* at ¶ 10. Here, the Owners' action in

withholding litigation expenses led to the Association's motion to enforce the DSA and resulted in additional attorney's fees, which established the breach.

{¶ 48} Based on the foregoing, the trial court did not err when it found that the Owners breached the DSA.

### C. Imposition of Attorney's Fees

{¶ 49} Finally, the Owners argue that this court's decision in *Rayco*, 2019-Ohio-3756 (8th Dist.), did not mandate attorney's fees when a party prevails after the filing of a motion to enforce settlement agreement. The Owners presume that the trial court imposed attorney's fees on reconsideration based on a belief that *Rayco* mandated the award. Even if the trial court properly applied *Rayco* to the facts of this case, the Owners believe *Rayco* has been impliedly overruled by the Ohio Supreme Court's decision in *Cruz v. English Nanny & Governess School*, 2022-Ohio-3586, such that it was error to impose attorney's fees at all.

{¶ 50} We agree that the language of *Rayco* is discretionary because it indicates a court "can" award attorney's fees when a party prevails on a motion to enforce settlement agreement. *Rayco* at ¶ 4.

{¶ 51} *Cruz* does not directly address the *Rayco* decision. The *Cruz* Court explicitly addressed the award of attorney's fees for appellate work and found that this court erred when it denied the appellant's request for appellate attorney's fees where punitive damages had been awarded. The *Cruz* Court chose not to address the finding in *Rayco* and other appellate decisions that allow an award of attorney's fees as compensatory damages toward the prevailing party in a settlement-

enforcement case.[2]  From our review, *Cruz* does not impliedly overrule the finding in *Rayco*.

{¶ 52} Accordingly, we find that the trial court had discretion to order attorney's fees when it found that the Owners breached the DSA.  Therefore, the third assignment of error is overruled.

### III.  Award of Attorney Fees and Expenses

{¶ 53} Finally, in the fourth assignment of error, the Owners challenge the reasonableness of the trial court's award of attorney's fees.  We find that the Owners' argument has merit.

#### A. Standard of Review

{¶ 54} An appellate court reviews a trial court's award of attorney's fees under the abuse-of-discretion standard.  *Barker v. McCoy*, 2015-Ohio-3127, ¶ 32 (4th Dist.), citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991).  An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary, or unconscionable."  *State v. Hill*, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  Unless we find an abuse of discretion, we will not disturb the trial court's ruling.  *Cleveland v. CapitalSource Bank*, 2016-Ohio-3172, ¶ 8 (8th Dist.).

#### B. Reasonableness of Attorney's Fees

---

[2] Recently, the Ohio Supreme Court accepted *Dornette v. Green Bldg. Consulting, L.L.C.*, 2025-Ohio-4944 (1st Dist.), a case that directly challenges the holding in *Rayco*. *02/17/2026 Case Announcements*, 2026-Ohio-475, *Dornette v. Green Bldg. Consulting, L.L.C.,* No. 2025-1637 (appeals accepted for review).

{¶ 55} A trial court's reasonableness determination regarding attorney's fees must be "based upon the actual value of the necessary services performed by the attorney, and evidence must exist in support of the court's determination." *Benton Village Condominium Owners' Assn. v. Bridge*, 2018-Ohio-4896, ¶ 28 (8th Dist.), citing *Bolek v. Miller-McNeal*, 2016-Ohio-1383. Further, a court looks to a number of factors including: (1) the time and labor involved, the novelty of the issues raised, and the necessary skill to pursue the course of action; (2) the customary fees for similar legal services in the locality; (3) the amount involved and the results obtained; and (4) the reputation, experience, and ability of counsel. *CapitalSource Bank* at ¶ 11, citing *Pyle v. Pyle*, 11 Ohio App.3d 31, 35 (8th Dist. 1983), citing *Swanson v. Swanson*, 48 Ohio App.2d 85 (8th Dist. 1976), and Prof.Cond.R. 1.5.

{¶ 56} At the hearing, both the Association's and the Owners' witnesses testified that $225 per hour was a reasonable rate for an experienced civil-litigation attorney. The Owners' witness argued that it was unreasonable for the Association's attorney to increase the rate of pay from $150 to $225. However, the evidence revealed that Nationwide paid the Association's attorney's fees under their insurance policy. The rate Nationwide received was discounted based on the volume of business Nationwide provided to the law firm. When Nationwide ceased covering the attorney's fees, the Association's attorney negotiated $225 per hour, the undiscounted rate. Based on the foregoing, there was sufficient evidence in the record to establish that the rate was reasonable. Accordingly, the trial court did not abuse its discretion in finding that $225 per hour was reasonable.

{¶ 57} Next, with respect to the award of expert fees, the Owners merely argue that *Rayco* does not permit such an award. However, *Rayco* does not forbid it either. The Owners do not cite to any other case law to support their argument that expert fees are not allowed; accordingly, we decline to address it. App.R. 12(A)(2); App.R. 16(A)(7).

{¶ 58} Finally, the Owners argue that it was unreasonable for the Association to continue to pursue the enforcement action when the Owners offered to pay the disputed amount in March 2022. The Board's president testified that the Owners offered to settle the enforcement action by paying the disputed amount. However, the Board and the Association refused the offer because it did not include all the accumulated prejudgment interest or attorney's fees. The offer was made a year after the motion to enforce was filed and almost 19 months before the trial court found that attorney's fees were appropriate. The Owners argue it was unreasonable to continue to pursue the litigation after the settlement offer was made. The Association argues that its choice to continue the litigation does not factor into the reasonableness of attorney's fees. The Owners' argument may have merit.

{¶ 59} Under *Rayco*, the prevailing party in a motion to enforce a settlement agreement is entitled to attorney's fees as compensatory damages to reimburse that party for having to resort to litigation to enforce the agreement. *Rayco*, 2019-Ohio-3756, at ¶ 4 (8th Dist.). "'Compensatory damages . . . shall be the result of the injury alleged and proved, and . . . the amount awarded shall be precisely commensurate with the injury suffered, neither more nor less. . . .'" *Whitaker v. M.T. Auto., Inc.*,

2006-Ohio-5481, ¶ 18, quoting *Birdsall v. Coolidge*, 93 U.S. 64 (1876). "[A] party who has been wronged by a breach of contract may not unreasonably sit idly by and allow damages to accumulate." *Ritter v. Fairway Park Properties, L.L.C.*, 2004-Ohio-2518, ¶ 14 (9th Dist.), quoting Calamari & Perillo, *The Law of Contracts*, § 562 at 14.15 (4th Ed. 1998). This court has held:

> Under Ohio law, the injured party in a breach-of-contract action has a duty to mitigate damages, meaning that the injured party cannot recover damages that it could have prevented by reasonable affirmative action. *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, ¶ 23 (1st Dist.). An injured party need only use reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages. *Id.* The burden of proof for the affirmative defense of failure to mitigate damages lies with the breaching party. *Id.*

(Cleaned up.) *Benton Village Condominium Owners' Assn., Inc.*, 2024-Ohio-1990 at ¶ 32 (8th Dist.).

{¶ 60} The Owners presented testimony that they offered a settlement in the amount of the disputed funds to resolve the dispute prior to the trial court's ruling. However, the Association presented testimony that that offer did not include interest or attorney's fees. This issue raises the question of whether the Association mitigated its damages. Because we cannot tell from the trial court's order whether it considered mitigation of damages, we reverse the trial court's award of attorney's fees and remand to the trial court to address that concern.

{¶ 61} Judgment affirmed in part, reversed in part, and remanded for the trial court to consider whether the Association mitigated its damages.

It is ordered that appellee and appellants split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
TIMOTHY W. CLARY, J., CONCUR